SAMUEL G. REED *vs.* HOME SAVINGS BANK.

Suffolk. November 21. — 22, 1879. MORTON & SOULE, JJ., absent.
March 9, 1880. — Feb. 28, 1881. ENDICOTT, SOULE & FIELD, JJ., absent.

The Superior Court has authority to report for the determination of this court, after verdict and before judgment, a ruling in matter of law excepted to at the trial, although a bill of exceptions has been disallowed; and, if the case is continued *nisi* from the term at which the verdict was returned, a report filed on the first day of the next term is seasonable.

An action for malicious prosecution will lie against a savings bank.

TORT for malicious prosecution. Trial in the Superior Court, before *Bacon,* J., who, after a verdict for the defendant, reported the case, against the defendant's objection, for the determination of this court, in substance as follows:

The defendant is a corporation, with all the powers and privileges, and subject to all the duties, liabilities and restrictions, set forth in the general laws of the Commonwealth relating to institutions for savings.

At the request of the defendant, and against the objection and exception of the plaintiff, the judge ruled that the action could not be maintained; and directed a verdict for the defendant.

After the entry of the case in this court, the defendant moved to dismiss it for the following reasons: "1. That, from the ruling of the Superior Court at the trial of the cause, the plaintiff took exceptions, and presented the same to the court, and said exceptions were disallowed; and the plaintiff took no measures to prove the same in this court. 2. That, having filed his bill of exceptions, and presented the same to the presiding justice, as allowed by law, the plaintiff could not in any other form bring the ruling objected to into this court for hearing and determination. 3. That the Superior Court has no power, after the expiration of three days after the verdict, to report the case for the determination of this court, without the consent and against the protest of the defendant, when at the trial exceptions were taken by the plaintiff, and no request was made by either party for a report of the case, and when the court did not at the trial, nor within three days after the verdict, nor for many weeks afterwards, offer to report or inform the defendant

that he intended or proposed to report, or should report, the case."

In support of the motion, a copy of the docket entries in the case during the year 1879 was produced, from which it appeared that the verdict for the defendant was rendered on April 25, and on the same day the plaintiff filed a bill of exceptions; that on June 27 the exceptions were disallowed for want of notice of the filing to the adverse party, and, on the same day, the case was " continued *nisi;* " and that on July 1 the report was filed.

*C. R. Train & J. O. Teele*, for the defendant.

*F. S. Hesseltine*, for the plaintiff.

GRAY, C. J. The authority of the Superior Court, at its discretion, to reserve upon report, after verdict and before judgment in a civil action, for the determination of this court, any ruling in matter of law distinctly objected to at the trial, is not subject to any such limit in point of time as the filing and presentment of exceptions; and is not affected by the question whether the party aggrieved has or has not formally alleged and duly presented exceptions to the ruling objected to. Gen. Sts. *c.* 115, §§ 6–8.

It cannot be doubted that the report of a question of law raised at the trial may be filed by the judge at any time during the same term at which the verdict is returned. The effect of an entry, after verdict and before judgment, of a general continuance of the case to the next term is to keep the case open for any judicial action that might have been had at the term from which it was continued; and a common continuance *nisi* has the same effect, unless the court disposes of the case in the intervening vacation.

By the copy of the docket entries, annexed to the defendant's motion, this case appears to have been continued *nisi* from the term at which the verdict was returned, and the report of the judge appears to have been filed on the first day of the next term. The entry of " continued *nisi* " is not limited in any way; it cannot have been ordered for the purpose of considering the exceptions, because they were disallowed on the very day on which it was made; and it is difficult to imagine any other object of the continuance than to prepare a report of the question

of law raised at the trial for the determination of this court. We are therefore of opinion that the report was seasonably filed and must *Stand for argument.*

The case was subsequently argued by the same counsel upon the question presented by the report.

LORD, J. It is too late to discuss the question, once much debated, whether a corporation can commit a trespass, or is liable in an action on the case, or subject generally to actions of tort as individuals are. The books of reports for a quarter of a century show that a very large proportion of actions of this nature, both for nonfeasance and for misfeasance, are against corporations.

It was contended at the argument, that an action for malicious prosecution so differs from other actions that it cannot be maintained against a corporation. But although, in order to maintain such an action, both malice and want of probable cause must be found, yet proof of want of probable cause will warrant the jury in inferring malice. *Mitchell* v. *Jenkins*, 5 B. & Ad. 588; *S. C.* 2 Nev. & Man. 301. *Stewart* v. *Sonneborn*, 98 U. S. 187. *Stone* v. *Crocker*, 24 Pick. 81. *Ripley* v. *McBarron*, 125 Mass. 272. And, by the great weight of modern authority, a corporation may be liable even when a fraudulent or malicious intent in fact is necessary to be proved, the fraud or malice of its authorized agents being imputable to the corporation; as in actions for fraudulent representations : *National Exchange Co.* v. *Drew*, 2 Macq. 103 ; *New Brunswick & Canada Railway* v. *Conybeare*, 9 H. L. Cas. 711, 738, 740; *Barwick* v. *English Joint Stock Bank*, L. R. 2 Ex. 259 ; for libel : *Philadelphia, Wilmington & Baltimore Railroad* v. *Quigley*, 21 How. 202 ; *Whitfield* v. *Southeastern Railway*, E. B. & E. 115 ; or for malicious prosecution : *Vance* v. *Erie Railway*, 3 Vroom, 334 ; *Copley* v. *Grover & Baker Co.* 2 Woods, 494 ; *Goodspeed* v. *East Haddam Bank*, 22 Conn. 530 ; *Carter* v. *Howe Machine Co.* 51 Md. 290 ; *Wheless* v. *Second National Bank*, 1 Baxter, 469 ; *Williams* v. *Planters' Ins. Co.* 57 Miss. 759 ; *Iron Mountain Bank* v. *Mercantile Bank*, 4 Misso. App. 505 ; *Walker* v. *Southeastern Railway*, L. R. 5 C. P. 640 ; *Edwards* v. *Midland Railway*, 6 Q. B. D. 287.

It was further contended that, although certain corporations might be liable to this action, such as business and trading

corporations, which are often involved in litigation, savings banks, from their peculiar character and purposes, cannot be subject to such suit. The argument is, that they are not business or trading corporations, but are rather trustees administering upon the property of those who stand in the relation of *cestuis que trust*, from motives of kindness and charity, and not for the purpose of gain. If we assume all this to be true, morally speaking, it does not affect the legal *status* of the corporation. Their powers and their duties are defined by their charters, and the rights and the duties are legal rights and duties, to be enforced by the ordinary rules of law. A depositor in a savings bank becomes a creditor of that bank as really and as effectually as a depositor in a bank of discount or deposit. There is no relation of trustee and *cestui que trust* between bank and depositor, any more than in any other case of debtor and creditor. It is rather in form than in substance that a depositor in a savings bank differs from a stockholder in a business corporation. In each case, the money is entrusted to the corporation to be managed by it for the benefit of the one who thus places it there; but by their charters, savings banks are required to make only such uses of the funds entrusted to them as shall, with care and prudence, preserve them from the perils and vicissitudes of trade. But, in all the essential features of their organization, savings banks are, like all other corporations, creations of the law for the more convenient transaction of business to be done by them. They are capable of corporate action, and, like all other corporations, are liable for their corporate action. In their conduct toward the public they owe the same duty to the public that other corporations owe. In their conduct toward individuals, they owe the same duty to individuals that other corporations owe. If a savings bank owns its banking-house, the same duties in relation to it exist as exist in a bank of deposit owning its own banking-house. It can no more permit a dangerous pitfall or a dangerous obstruction to exist upon its land to the injury of another, than can any other corporation or an individual. In its business transactions with individuals, it is subject to the same rules of law as other corporations or individuals. Its contracts may be impeached for fraud, as the contracts of other parties may be impeached for fraud; or may be void for

illegality, as the contracts of other parties are void for illegality and we see no ground upon which we can distinguish its corporate liabilities from those of other corporations, and therefore no reason why this action cannot be maintained against the defendant corporation.

Of course, we have before us no question of evidence, or of its sufficiency to maintain the action, but simply the question whether, if the proof is sufficient to show that the defendant as a corporation did all the acts which in an individual would create the liability, such liability would exist in the corporation.

*New trial ordered.*