CESARE GENGA *vs.* DIRECTOR GENERAL OF RAILROADS.

Hampden.    September 21, 1922. — November 27, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Practice, Civil,* Amendment.    *Federal Control of Railroad.    Assault and Battery.    Malicious Prosecution.*

According to the practice in this Commonwealth, it is within the power of the Superior Court to allow an amendment in an action substituting a new defendant for the defendant originally named in the writ, although an action begun against such new defendant at the time of the allowance of the amendment would be barred by the statute of limitations.

A railroad corporation can be held liable in an action of tort for assault and battery of the plaintiff committed by its employee within the scope of his employment.

A railroad corporation can be held liable in an action of tort for malicious prosecution of the plaintiff by its employee within the scope of his employment.

The United States, in control of a railroad under the Federal Control Act, 40 U. S. Sts. at Large, 451, is liable for compensatory damages resulting from an assault and battery committed by an employee within the scope of his employment under the Director General of Railroads, and for compensatory damages resulting from a malicious prosecution instituted by such an employee within the scope of his employment.

Under the Federal Control Act, 40 U. S. Sts. at Large, 451, General Orders of the Director General of Railroads, No. 50 and 50-A, and § 206, a, d, of the Transportation Act (1920), 41 U. S. Sts. at Large, 456, it was proper for the Superior Court, in an action begun on July 15, 1919, against the New York, New Haven and Hartford Railroad Company, for assault and battery upon and malicious prosecution of the plaintiff on September 16, 1918, by employees of the defendant acting within the scope of their employment, to allow on December 19, 1921, an amendment substituting as defendant "James C. Davis, agent designated by the President under the Transportation Act of March, 1920, for the New York, New Haven and Hartford Railroad," although the Director General of Railroads had not been named as an original defendant and although, if an original action for the assault and battery had been begun against such agent at the time of the allowance of the amendment, it would have been barred by G. L. c. 260, § 4.

TORT, with a declaration in two counts, the first count being for damages resulting from alleged assault and battery of the plaintiff on September 16, 1918, committed by "a servant of the defendant acting within the course of the defendant's employment," and the second count being for malicious prosecution of the plaintiff by the defendant "by its agents or servants" on the same day.    Writ dated July 15, 1919.

The defendant originally named in the writ was the New York, New Haven and Hartford Railroad Company. A motion to amend was allowed on December 19, 1921, which substituted for the corporation as defendant "James C. Davis, agent designated by the President under the Transportation Act of March, 1920, for the New York, New Haven and Hartford Railroad." Process against the new defendant was issued on December 19, 1921, and was served on the same day. The new defendant filed a motion to dismiss the action, setting forth the following grounds:

"1. That under the laws of the United States, this Court is without jurisdiction to entertain this action as against the above named defendant.

"2. That the proceedings heretofore had in this action, seeking to make the said James C. Davis, Agent, a party defendant in this action by amendment or substitution, and the issuance and service of the writ herein summoning him to appear and take upon himself the defense of this action as a party defendant, are null and void because in violation of and in conflict with the laws of the United States.

"3. That this proceeding against the above named defendant was not instituted within the time prescribed nor in the manner provided by the laws of the United States, which laws exclusively govern the plaintiff's right, if any, to maintain an action against the above named defendant.

"4. That the provisions of the General Laws of this Commonwealth, under which authority was exercised to issue the summons herein to the above named defendant, in so far as said provisions purport to authorize the proceedings herein against the above named defendant, are repugnant to the laws of the United States, and, therefore, said proceedings are null and void and without the authority of law.

"5. That it appears from the record of the return of the writ herein issued to the above named defendant that the service of said writ was not made in accordance with the provisions of the laws of this Commonwealth and therefore, said service is null and void."

The motion was heard by *N. P. Brown*, J., and was denied; and, being of opinion that the ruling thus made raised important and substantial questions of law which ought to be determined

by this court before further proceedings in the Superior Court, the judge reported the action for such determination.

*M. G. Gonterman,* for the defendant.

*G. F. Leary, G. D. Cummings & G. F. Palmer,* for the plaintiff, submitted a brief.

RUGG, C.J.   This is an action of tort wherein the plaintiff, a resident of Springfield in our county of Hampden, seeks to recover damages for alleged assault and malicious prosecution occurring about September 16, 1918.   The record does not disclose the place of the alleged assault.   The malicious prosecution is alleged to have been in the United States District Court at Boston.   It cannot be presumed under these circumstances that the injuries occurred outside this Commonwealth and no contention of that nature has been made by the defendants.   The action was begun by a writ sued out of the Superior Court, dated July 15, 1919, duly served upon the New York, New Haven and Hartford Railroad, hereafter designated as the corporation.   The acts of which complaint is made occurred during the period of federal control of the corporation under the acts of Congress and proclamation of the President.   The corporation appeared and answered, setting up the fact that its property and business were at the time alleged under federal control.   Thereafter on December 19, 1921, the plaintiff was allowed against the protest of the corporation to amend its writ and declaration by substituting "James C. Davis, agent designated by the President under the Transportation Act of March, 1920," as defendant in place of the corporation.   Process issued to summon such agent, who appeared specially without consenting to the jurisdiction of the court and filed a motion to dismiss the action against him on several grounds.   This motion was denied as matter of law and the questions thereby raised were reported for our consideration.

There is nothing in the record to indicate that the action is not brought in the county where the plaintiff resided at the time of the accrual of the cause of action.   That point has not been urged.   Hence General Orders No. 18 and No. 18-A in this particular raise no barrier to the plaintiff.   See *Keegan* v. *Director General of Railroads, ante,* 96.

The writ and declaration set forth a cause of action within the jurisdiction of the Superior Court.   A corporation can be held

liable for assault committed by its servants in the course of their employment, *Moore* v. *Fitchburg Railroad*, 4 Gray, 465, *Jackson* v. *Old Colony Street Railway*, 206 Mass. 477, 486, and for malicious prosecution instituted pursuant to the general duty of its employee, *Reed* v. *Home Savings Bank*, 130 Mass. 443, *White* v. *Apsley Rubber Co.* 194 Mass. 97.

Plainly the corporation cannot be held liable for acts of persons in operation of its railroad and business under federal control. *Nominsky* v. *New York, New Haven & Hartford Railroad*, 239 Mass. 254. *Missouri Pacific Railroad* v. *Ault*, 256 U. S. 554. That, however, does not affect the jurisdiction of the court over the cause of action or over the parties. The principle applied in *Corbett* v. *Boston & Maine Railroad*, 219 Mass. 351, 356, is inapposite to these facts.

If the question be treated purely as one of State practice, it was within the power of the Superior Court to allow an amendment substituting a new defendant for the one first named even though an original action then brought against the new defendant would at that time be barred by the statute of limitations. The action for assault would have been barred by G. L. c. 260, § 4, if action had not been brought before the motion to amend the writ and declaration was filed. But that fact does not as matter of law prevent the amendment substituting a new party defendant. The allowance of such an amendment under the State practice rests in sound judicial discretion. *Hutchinson* v. *Tucker*, 124 Mass. 240. *Silva* v. *New England Brick Co.* 185 Mass. 151. *Lester* v. *Lester*, 8 Gray, 437. *McLaughlin* v. *West End Street Railway*, 186 Mass. 150. *Cogswell* v. *Hall*, 185 Mass. 455. *Tracy* v. *Boston & Northern Street Railway*, 204 Mass. 13, 16. *Knights* v. *Treasurer & Receiver General*, 236 Mass. 336, 341.

It was held in *Ætna Mills* v. *Director General of Railroads*, 242 Mass. 255, after full discussion, with ample citation of authorities, that under the Federal Control Act, 40 U. S. Sts. at Large, 456, § 10, and the Transportation Act (1920), 41 U. S. Sts. at Large, 461, § 206 (b), the State practice was imported into proceedings in the State courts against the government of the United States for redress of grievances against it arising from its control of the railroads, and that by amendment the federal agent might be substituted for the corporation named originally as defendant.

No question as to any statute of limitations was raised or considered in that case.

The question presented in the case at bar is whether, under the controlling federal statutes upon the facts here disclosed, the amendment, bringing in the federal agent as party defendant in substitution for the corporation originally named, lawfully could have been allowed.

The decision of this question is governed by the federal statutes and is federal in its nature, upon which the adjudication of the United States Supreme Court is final. *Seaboard Air Line* v. *Renn*, 241 U. S. 290, 293. It involves consideration of two matters: (1) whether the causes of action are those for which the United States in control of the railroad is liable in damages, and (2)whether the federal agent lawfully could, under the statutes of the United States, have been made a party defendant by amendment at the time and under the circumstances here disclosed.

1. The United States was in control of the railroad property of the corporation and solely liable for wrongs such as are here the subject of complaint committed in the operation thereof. *Missouri Pacific Railroad* v. *Ault*, 256 U. S. 554. The United States therefore can be held liable to actions only upon the exact terms and in the precise manner declared by the acts of Congress and proclamations of the President and orders pursuant thereto. *McArthur Brothers Co.* v. *Commonwealth*, 197 Mass. 137. *Keegan* v. *Director General of Railroads, ante*, 96. *Public Service Commissioners* v. *New England Telephone & Telegraph Co.* 232 Mass. 465. *Reid* v. *United States*, 211 U. S. 529, 538. *Schillinger* v. *United States*, 155 U. S. 163, 166.

The corporation, if operating itself and not under federal control, would have been liable under the common law for the causes of action here set forth.

It is indubitable that under the common law of this Commonwealth a railroad corporation is liable in damages for assault committed by its servants in the performance of their duties acting within the scope of their employment. *Moore* v. *Fitchburg Railroad*, 4 Gray, 465. *McKeon* v. *New York, New Haven & Hartford Railroad*, 183 Mass. 271. *Jackson* v. *Old Colony Street Railway*, 206 Mass. 477. *Gentile* v. *Boston Elevated Railway*, 217 Mass. 113. *Hayne* v. *Union Street Railway*, 189 Mass. 551.

*New Jersey Steamboat Co.* v. *Brockett,* 121 U. S. 637, 647. See *Bryant* v. *Rich,* 106 Mass. 180. The allegations of the first count of the plaintiff's declaration bring his case within that principle. If the assault is committed by the servant, not in the course of his employment but outside the scope of his duties, or in a spirit of vindictiveness or to gratify personal animosity, or to carry out an independent purpose of his own, then the corporation is not liable. That, however, is a defence to be developed at the trial. *McGilvray* v. *West End Street Railway,* 164 Mass. 122. *Brown* v. *Boston Ice Co.* 178 Mass. 108. *Planz* v. *Boston & Albany Railroad,* 157 Mass. 377. *Ryan* v. *Keane,* 211 Mass. 543, 545. *Harrington* v. *Boston & Maine Railroad,* 213 Mass. 338. *Douglas* v. *Holyoke Machine Co.* 233 Mass. 573. *Fairbanks* v. *Boston Storage Warehouse Co.* 189 Mass. 419.

It is well settled that corporations may be held liable in an action for false arrest and malicious prosecution by their agents in the course of their employment. That was established in this Commonwealth as to savings banks by *Reed* v. *Home Savings Bank,* 130 Mass. 443. The principle has been applied in a large variety of cases where, for example, corporations have been held responsible for libel committed by servants in the course of their employment, *Philadelphia, Wilmington, & Baltimore Railroad* v. *Quigley,* 21 How. 202, 209; *Fogg* v. *Boston & Lowell Railroad,* 148 Mass. 513; *Finnish Temperance Society Sovittaja* v. *Finnish Socialistic Publishing Co.* 238 Mass. 345; slander, *Mills* v. *W. T. Grant Co.* 233 Mass. 140; false imprisonment, *Zinkfein* v. *W. T. Grant Co.* 236 Mass. 228; *Dixon* v. *New England Railroad,* 179 Mass. 242; malicious prosecution, *White* v. *Apsley Rubber Co.* 194 Mass. 97; *Zygmuntowicz* v. *American Steel & Wire Co. of New Jersey,* 240 Mass. 421; false arrest, *Cotter* v. *Nathan & Hurst Co.* 218 Mass. 315; gross negligence, *Foster* v. *Essex Bank,* 17 Mass. 479; *National Bank* v. *Graham,* 100 U. S. 699. It was said in 238 Mass. at page 352, with citation of many authorities, that "The ancient doctrine that a corporation because incapable of passion or emotion could not be held liable for acts involving malice of its officers or agents acting within the general scope of their authority or employment has long since been outgrown." It was held expressly in *Krulevitz* v. *Eastern Railroad,* 140 Mass. 573, that a railroad corporation could be held liable in damages

for malicious prosecution instituted by one of its conductors. There are many authorities outside this Commonwealth where railroads have been held liable for malicious prosecution. *Edwards* v. *Midland Railway,* 6 Q. B. D. 287. *Walker* v. *South Eastern Railway,* L. R. 5 C. P. 640. *Vance* v. *Erie Railway,* 3 Vroom, 334. *Lambert* v. *Great Eastern Railway,* [1909] 2 K. B. 776. *Goff* v. *Great Northern Railway,* 3 El. & El. 672, 682. *Gulf, Colorado & Sante Fe Railway* v. *James,* 73 Texas, 12. *Evansville & Terre Haute Railroad* v. *McKee,* 99 Ind. 519. *Lynch* v. *Metropolitan Elevated Railway,* 90 N. Y. 77.

The causes of action set forth in the declaration are in our opinion of the kind for which the United States in control of the railroad is liable. That seems to us to be the meaning of the Federal Control Act, § 10, 40 U. S. Sts. at Large, 456: "Carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law. . . . Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government." The only authoritative declaration of which we are aware as to the signification of these words is in *Missouri Pacific Railroad* v. *Ault,* 256 U. S. 554, at page 559: "The plain purpose of the above provision was to preserve to the general public the rights and remedies against common carriers which it enjoyed at the time the railroads were taken over by the President except in so far as such rights or remedies might interfere with the needs of federal operation. The provision applies equally to cases where suits against the carrier companies were pending in the courts on December 28, 1917; to cases where the cause of action arose before that date and the suit against the company was filed after it; and to cases where both cause of action and suit had arisen or might arise during federal operation. The Government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. The situation was analogous to that which would exist if there were a general receivership of each

transportation system. Operation was to be continued as there-tofore with the old personnel, subject to change by executive order. The courts were to go on entertaining suits and entering judgments under existing law, but the property in the hands of the President for war purposes was not to be disturbed. With that exception, the substantial legal rights of persons having dealings with the carriers were not to be affected by the change of control." And again at page 563: "By these provisions the United States submitted itself to the various laws, state and federal, which prescribe how the duty of a common carrier by railroad should be performed and what should be the remedy for failure to perform. By these laws the validity and extent of claims against the United States arising out of the operation of the railroad were to be determined. But there is nothing either in the purpose or the letter of these clauses to indicate that Congress intended to authorize suit against the Government for a penalty, if it should fail to perform the legal obligations imposed. The Government undertook as carrier to observe all existing laws; it undertook to compensate any person injured through a de-parture by its agents or servants from their duty under such law; but it did not undertake to punish itself for any departure by the imposition upon itself of fines and penalties or to permit any other sovereignty to punish it. . . . The purpose for which the Government permitted itself to be sued was compensation, not punishment. . . . Wherever the law permitted compensatory damages they may be collected against the carrier while under federal control."

The causes of action here declared are not for a penalty. They relate to the ordinary conduct of the business of common carriers. The enforcement of these causes of action does not appear likely to interfere "with the needs of federal operation." It would simply preserve to members of the general public dealing with railroads the rights and privileges which they enjoyed during private control. It is the only means as a practical matter whereby members of the general public can receive compensa-tion for common law injuries sustained by them as a result of the operation of the railroads. The right of action against the indi-vidual employee of the government actually committing the wrong would ordinarily be barren of valuable result. The government

would seem to be under the same necessity for preserving order, protecting passengers, and guarding itself from fraud, imposition and theft as would carriers under private control and presumably would be compelled to employ the same means to that end as have been used by private owners.   The zeal and desire to accomplish results on the part of employees would be as likely to outrun discretion and invade private rights under the government as employer as under a corporation.   Every reason which led to the imposition of this liability upon the railroad corporation seems to us equally valid in favor of the same liability on the part of the United States as operator of the railroads.   The government will be subjected only to the payment of compensatory damages because in this Commonwealth the recovery of exemplary, vindictive or punitive damages is not permissible. *Ellis* v. *Brockton Publishing Co.* 198 Mass. 538, 543.   *Boott Mills* v. *Boston & Maine Railroad*, 218 Mass. 582, 589.   *Hall* v. *Paine*, 224 Mass. 62, 68.

It seems to us to follow from the words of the Federal Control Act and from the principles stated in *Missouri Pacific Railroad* v. *Ault*, 256 U. S. 554, that the substantive causes of action set out in the present declaration are available against the United States.   The words of the federal statute as interpreted by this decision of the United States Supreme Court import into the federal control of railroads the common law liability on the part of the United States which existed in this Commonwealth before federal control on the part of railroad corporations so far as concerns the causes of action here declared upon.

The conclusion seems to be supported by decisions as to the liability of receivers of railroads appointed by courts of the United States under the Judicial Code, 36 U. S. Sts. at Large, 1104, 1105, §§ 65, 66.   *McNulta* v. *Lochridge*, 141 U. S. 327, 331.   *Eddy* v. *Lafayette*, 163 U. S. 456, 464.   *Sullivan* v. *Hustis*, 237 Mass. 441, and cases there reviewed.

2. We are of opinion that there is nothing in the Federal Control Act which prevents the allowance of the amendment bringing in the federal agent as party defendant under the circumstances here disclosed.   It was provided by General Order No. 50 issued by the Director General of Railroads on October 28, 1918, that "actions at law . . . hereafter brought in any court based on . . . claim for . . . injury to person, or for loss and damage

to property, arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceeding but for Federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise; provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties, and forfeitures. . . . The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom." On January 11, 1919, General Order No. 50 was amended by General Order No. 50-A, which, as conceded at the argument by the attorney for the defendant, "was to the same effect as General Order No. 50, except that it provided that the name of the defendant in new actions or in the amendment of pending actions, should be the 'Director General of Railroads.'" We do not think that the force and effect of these orders is that no action thereafter wrongly brought against the railroad corporations could be amended by substituting the name of the proper officers of government provided such amendment was permissible under the established practice of the courts where the actions were pending. This appears to be the force and effect of the Transportation Act of February 28, 1920, 41 U. S. Sts. at Large, 456. It there is provided by § 206 (a) that actions at law arising out of federal control may after the termination of federal control be brought against an agent designated therefor by the President, and that "Such actions . . . may, within the periods of limitation now prescribed by State or Federal statutes but not later than two years from the date of the passage of this Act, be brought . . ." in certain courts. Subsection (d) of the same section 206 is in these words: "Actions, suits, proceedings, and reparation claims, of the character above described pending at the termination of Federal control shall not abate by reason of such termination, but may be prosecuted to

final judgment, substituting the agent designated by the President under subdivision (a)." The words of this section are general and are not confined to cases brought against William G. MacAdoo or Director General of Railroads. They are comprehensive enough to include actions brought against railroads.

To hold that there can be no amendment in the case at bar would operate as a genuine hardship because the statute of limitations has long ago run against one of the plaintiff's alleged claims and he cannot prosecute it unless allowed to amend. From the number of actions coming to our attention wrongly brought against railroad corporations, it seems manifest that the terms of General Orders 50 and 50-A did not speedily come to the general knowledge of the profession. This is a case where the amendment was allowed well within the two years from the date of the passage of the Transportation Act and hence is not violative of its § 206 (a). Although doubtless a more strict construction would be permissible, we are of opinion that the federal statute "impliedly imported into it the State practice with reference to substituting a new defendant by amendment. *Robb* v. *Connolly*, 111 U. S. 624. *Second Employers' Liability Cases*, 223 U. S. 1, 56. *Bacon* v. *George*, 206 Mass. 566." *Aetna Mills* v. *Director General of Railroads*, 242 Mass. 255. The Aetna Mills case on this point is decisive of the case at bar on the point as to amendment.

*Exceptions overruled.*