LEON SACK *vs.* DIRECTOR GENERAL OF RAILROADS.

Norfolk.    October 17, 18, December 20, 1922. — May 23, 1923.

Present: RUGG, C.J., BRALEY, PIERCE, & CARROLL, JJ.

*Federal Control of Railroad. Practice, Civil,* Amendment. *Negligence,* Railroad: crowd at station.

In an action, originally brought on March 22, 1919, against " Walker D. Hines, as he is Director General of the United States Railroad Administration; and New York, New Haven and Hartford Railroad Company," wherein a motion to amend the writ had been allowed on June 17, 1921, substituting as defendant " James C. Davis, Director General of Railroads and as agent under the Transportation Act of 1920," the Superior Court had jurisdiction after a trial and verdict in the Superior Court and before judgment to allow a further motion by the plaintiff that his previous motion to amend " be filed and allowed as of May 2, 1921, instead of as of June 17, 1921, as now appears of record."

An action of tort for personal injuries cannot be maintained against the operator of a railroad by one who, when he was at a station and intending to board an approaching train on a Saturday afternoon, was pushed by a crowd, in spite of his resistence, against one of the cars, fell beneath it and was injured, although it appears that the regular assembling for a considerable time before the date of the accident of the crowd at that time on Saturdays, due to the workmen leaving nearby factories for the week end holiday, had been known to the defendant for some time, if the evidence falls short of showing that the conduct of the crowds on occasions previous

to the accident to the plaintiff had displayed turbulence, roughness, disorder or disregard for the safety of others.

A finding of conduct on the part of such crowds displaying turbulence, roughness, disorder or disregard for the safety of others was not warranted where the evidence tended merely to show the congregation of large crowds on the occasions previous to the plaintiff's injury, " that as a train would come in they would get up and . . . they would rush to get upon the train;" that " they made a ' swash ' for the train and if you weren't a good man, or strong, you would have to wait for the next train . . . the police officer could not stop the " crowd; that " one police officer would have no use at all for that crowd coming there; . . . that, as the train came into the station, some people would rush across ahead of the engine;" and that a police officer and a baggagemaster stationed there vainly attempted to keep the crowds from crossing the tracks to the side farther from the station to board the train from that side.

TORT for personal injuries received on June 29, 1918, by reason of the conduct of a crowd of prospective passengers when the plaintiff was at the station of the New York, New Haven and Hartford Railroad (then under federal control) at Quincy and was about to board a train. Writ dated March 22, 1919.

In the Superior Court, the action was tried before *King*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in his favor. The motion was denied. The jury found for the plaintiff in the sum of $20,000; and the defendant alleged exceptions.

Proceedings relating to the remanding of the action to the Superior Court and the amendment of the writ as to the defendant, *nunc pro tunc*, and the defendant's exceptions thereto are described in the opinion.

42 U. S. Sts. at Large, 1443, approved March 3, 1923, reads as follows:

" Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That section 206 of the Transportation Act, 1920, is amended by adding at the end thereof two new subdivisions to read as follows:

" (h) Actions, suits, proceedings, and reparation claims, of the character described in subdivision (a), (c), or (d), properly commenced within the period of limitation pre-

scribed, and pending at the time this subdivision takes effect, shall not abate by reason of the death, expiration of term of office, retirement, resignation, or removal from office of the Director General of Railroads or the agent designated under subdivision (a), but may (despite the provisions of the Act entitled ' An Act to prevent the abatement of certain actions,' approved February 8, 1899), be prosecuted to final judgment, decree, or award, substituting at any time before satisfaction of such final judgment, decree, or award the agent designated by the President then in office. Nor shall any action, suit, or other proceeding heretofore or hereafter brought by any public officer or official, in his official capacity, to enforce or compel the performance of an obligation due or accruing to the United States arising out of Federal control, abate by reason of the death, resignation, retirement, or removal from office of such officer or official, but such action, suit, or other proceeding may (despite the provisions of such Act of February 8, 1899), be prosecuted to final judgment, decree, or award, substituting at any time before satisfaction of any such final judgment, decree, or award the successor in office.

" (i) Orders providing for a substitution in such cases made before this subdivision takes effect by courts having jurisdiction of the parties and subject matter are hereby validated, anything in such Act of February 8, 1899, to the contrary notwithstanding. Actions, suits, reparation claims, or other proceedings of the character described in subdivision (h) which have been abated or dismissed solely because of the provisions of such Act of February 8, 1899, shall be reinstated upon reasonable notice to the adverse party, and upon proper motion therefor filed within one year from the time this subdivision takes effect."

*M. G. Gonterman, (H. Lawlor* with him,) for the defendant.

*F. W. Mansfield,* for the plaintiff.

*Lee M. Friedman & L. B. King,* were permitted to file a brief *amici curiae.*

RUGG, C.J. This is an action of tort. The plaintiff alleges that he was entitled to the rights of a passenger on the transportation system known as the New York, New

Haven and Hartford Railroad in attempting to board a train for Boston at the station in Quincy in this Commonwealth at a little after two o'clock on the afternoon of Saturday, June 29, 1918, and received injury through the negligence of servants of the defendant in failing to control the crowd of people at the station, to give adequate warning of danger, and to police the station properly. The injuries occurred during the period of federal control of railroads. Federal Control Act of March 21, 1918, c. 25, § 9; 40 U. S. Sts. at Large, 456. The action originally was brought against " Walker D. Hines, as he is Director General of the United States Railroad Administration; and New York, New Haven and Hartford Railroad Company." The writ was dated on March 22, 1919, and was entered on May 5, 1919. On June 17, 1921, a motion to amend the writ and declaration was allowed, substituting for parties originally named as defendants, " James C. Davis, Director General of Railroads and as agent under the Transportation Act of 1920." On the same day verdict was rendered for the plaintiff.

The defendant's exceptions to the merits of the case were duly filed and allowed. Those exceptions came on to be heard before us on October 17 and 18, 1922. At that time the defendant argued that Walker D. Hines, the duly appointed Director General of Railroads when the action was brought, 40 U. S. Sts. at Large, 1922, and named as a defendant in the writ, was acting in that capacity at the termination of federal control on February 28, 1920; that he was designated as agent under the Transportation Act of February 28, 1920, c. 91, 41 U.S. Sts. at Large, 461, § 206 (a) in effect March 1, 1920, and continued to act until May 18, 1920, at which time John Barton Payne was appointed Director General of Railroads and designated as agent under the Transportation Act by proclamations of the President, 41 U. S. Sts. at Large, 1793, 1794; that on March 26, 1921, James C. Davis was designated as agent to succeed John Barton Payne, see Sts. of U. S. passed at First Session of 67th Congress, Proclamations, page 5, and that by Act of Congress of February 8, 1899, c. 121, 30 U. S. Sts. at Large, 822, the motion to substitute James C. Davis as

agent in place of Walker D. Hines was not seasonably filed, and that the court was without jurisdiction to hear and decide the case. *Payne* v. *Industrial Board of Illinois*, 258 U. S. 613. Without decision of the point this court, on motion of 'the plaintiff, issued on November 14, 1922, its rescript discharging those exceptions and remanding the case to the Superior Court for such corrections, amendments or changes as that court might see fit to make. In the Superior Court the plaintiff moved that the order of that court allowing his motion to substitute " James C. Davis, Director General of Railroads and as agent under the Transportation Act of 1920," as party defendant, " be filed and allowed as of May 2, 1921, instead of as of June 17, 1921, as now appears of record." That motion was heard and allowed on November 22, 1922, against exceptions of the defendant. The case is here again and has been argued on both bills of exceptions.

The allowance of the amendment *nunc pro tunc* substituting the new defendant was valid under our practice, which is applicable to actions of this nature against the Director General of Railroads. *Perkins* v. *Perkins*, 225 Mass. 392. G. L. c. 235, § 4. *Genga* v. *Director General of Railroads*, 243 Mass. 101. *Aetna Mills* v. *Director General of Railroads*, 242 Mass. 255.

Whatever doubt might have existed as to the propriety of this procedure against the Director General of Railroads, and as to our jurisdiction to consider and decide this case, has been removed by an Act of Congress approved on March 3, 1923, 42 U. S. Sts. at Large, 1443, amending § 206 of the Transportation Act of 1920. That act by its express terms is applicable to pending actions. *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1, 8. The effect of that act is by plain and indubitable words to render inapplicable to this action the limitation established by Act of Congress of February 8, 1899, 30 U. S. Sts. at Large, 822, and to permit the maintenance of this action in the present form at this time. Counsel for its defendant raises no question as to the applicability of that act to the substitution which has been made in this action.

During the period of federal control of railroads, complete possession by the United States replaced private ownership, and entire responsibility for torts arising out of railroad operation rested exclusively upon the government. It is within the province of the United States as proprietor for the time being of railroads to establish by Congress the terms, conditions, and limitations upon which actions relating to railroad management may be maintained against it, and as against itself to extend, waive or modify the same. *Keegan* v. *Director General of Railroads,* 243 Mass. 96. *Genga* v. *Director General of Railroads,* 243 Mass. 101, and cases collected in each opinion. The authority of the sovereign power to enact such a statute with respect to itself cannot be doubted. The legislative department of government " is not forbidden to be just in some cases where it is not required to be by the letter of paramount law." *Earle* v. *Commonwealth,* 180 Mass. 579, 583. *Brackett* v. *Commonwealth,* 223 Mass. 119, 123. It follows that the court has jurisdiction over the cause and the parties.

The plaintiff's case on its merits rests wholly on the contention that there was a failure of duty on the part of the defendant in not policing and controlling the crowd of people at the Quincy station at the time of his injury.

The evidence in its aspect most favorable to the plaintiff, disregarding those parts which tend to exonerate the defendant, is that the plaintiff was an employee at the Fore River ship building works during the late war; that there was a great increase in the number of persons there employed within a year prior to the date of the plaintiff's injury, and a consequent increase in the passenger traffic on the railroad between Quincy and Boston; that on Saturdays between noon and seven minutes past three o'clock in the afternoon, for a considerable time before the accident, there were nine trains from Quincy for Boston, seven of which were extras, and four of which were eight car trains exclusively for Quincy service. The plaintiff, having a ticket and intending to take a train for Boston, went to the railroad station in Quincy on the Saturday afternoon in question. A crowd of a thousand people was there, as estimated by him. He then

crossed the tracks to the westerly side and sat for a time on some timber. Later, he was standing about six or seven feet away from the tracks, waiting for the train as it approached, and was pushed by the crowd in spite of his resistance against one of the cars and, falling beneath it, was injured. This great augmentation in travel from Quincy to Boston and its cause were brought directly to the knowledge of the agents of the defendant. Not long before the accident a policeman and a baggage master were usually upon the platform of the Quincy station to " tell the crowd to keep back " from the tracks, and " trying to prevent people from getting hurt by jumping on the train"; that reports came to an assistant superintendent of the defendant " of people gathering on the left side of the track [opposite the station] to board Boston trains . . . that they rushed for trains on both sides of the track; that the crowd made the danger." On Saturday afternoons crowds of people estimated at several hundred gathered at the station. There were records that on one previous Saturday this same train, which the plaintiff intended to take, had carried from Quincy 688 passengers, and on another, 627. Evidence from several witnesses as to the number of people on occasions previous to the plaintiff's injury and their conduct at the Quincy station was that there were crowds at times when Fore River employees took the trains; that the crowds were on the platform and " sitting on the grass plot, some on the freight platform . . . ; that when they heard a train coming they would rush for the train to get aboard . . . that as a train would come in they would get up and . . . they would rush to get upon the train. . . . when the Fore River crowd came they made a ' swash ' for the train and if you weren't a good man, or strong, you would have to wait for the next train . . . the police officer could not stop the Fore River crowd; . . . one police officer would have no use at all for that crowd coming there . . . that some of the people would be sitting down and when the train came in, would jump up and make a rush to grab it, that he observed this . . . probably eighty or ninety times. . . . had seen Williams [the police officer] at the station on Saturdays, trying to

keep people back from the train . . . to prevent people getting on . . . that people from Fore River sometimes rushed on the extra . . . trains; . . . the crowd would rush to get on the head cars . . . he had observed the crowds at the station time and time again on Saturday afternoon . . . he had seen both Williams and the baggage master stand there and tell the crowd to keep back; that as the train came into the station, some people would rush across ahead of the engine . . . that he had seen Williams push some of them back; that . . . he had observed Williams and the baggage master call to people on the gravel platform [on the side of the tracks opposite the station] and drive them back to the cement platform; just before the train came in there would be quite a crowd make a rush over . . . he had seen Williams drive one or two back from the gravel platform . . . that Williams put up his hands trying to keep them back; that he was driving them back all the time; . . . that the officer used to keep the crowd back on the platform side, but he could not keep them all back because there were too many for him sometimes; that he had seen him drive them off the gravel platform and warn them; that . . . he observed the officer waving to the people, and had heard him order the people back to the platform; that in the majority of cases, they went back, but as the train would come in, there would be a mad rush on the station side."

This description of the conduct of the crowd at the station on previous occasions conveys no idea of turbulence, roughness, disorder or disregard for the safety of others. The crowd itself was no evidence of dangerous confusion. Like or greater numbers of people gather frequently at places of amusement and other meetings and resorts of the public. The statement that the crowd rushed for the train does not import violence. *Foley* v. *Boston & Maine Railroad,* 193 Mass. 332. The crowd was composed chiefly of workmen leaving their labor for the week end half holiday. The place from which they came and the occasion which called them together were not calculated to incite disorder, violence or disregard of the rights of others. There was nothing to indicate the likelihood of impetuosity, lawlessness,

riotousness or force.  *Treat* v. *Boston & Lowell Railroad,* 131 Mass. 371.  To hold this defendant responsible on this evidence in effect would render the proprietor of every place where similar numbers of people congregate liable for all injuries sustained by anybody through the ordinary and incidental jostling commonly accompanying such gatherings.

We are of opinion that the facts here disclosed do not support a finding that there was any breach of duty owed by the defendant to the plaintiff.  In reaching that conclusion it is assumed without so deciding that the plaintiff was entitled to the rights of a passenger.  The case at bar falls within the class of cases illustrated by *Anshen* v. *Boston Elevated Railway,* 205 Mass. 32; *Jackson* v. *Boston Elevated Railway,* 217 Mass. 515; *Gascievicz* v. *Boston Elevated Railway,* 222 Mass. 266; *MacGilvray* v. *Boston Elevated Railway,* 229 Mass. 65; *Knowles* v. *Boston Elevated Railway,* 233 Mass. 347; *Ritchie* v. *Boston Elevated Railway,* 238 Mass. 473; *Savickas* v. *Boston Elevated Railway,* 239 Mass. 226.  It is distinguishable from cases like *Kuhlen* v. *Boston & Northern Street Railway,* 193 Mass. 341; *Glennen* v. *Boston Elevated Railway,* 207 Mass. 497; *Kelley* v. *Boston Elevated Railway,* 210 Mass. 454; *Morse* v. *Newton Street Railway,* 213 Mass. 595; *Collins* v. *Boston Elevated Railway,* 217 Mass. 420; *Danovitz* v. *Blue Hill Street Railway,* 218 Mass. 42; *Franz* v. *Holyoke Street Railway,* 239 Mass. 565.  The principles of law governing the rights of the parties are familiar and have been frequently stated.  They are amplified in the cases cited and need not be repeated.

It becomes unnecessary to consider the other defences raised.

The exceptions set forth in the second bill of exceptions are overruled.  A verdict ought to have been directed for the defendant on the main case as set forth in the first bill of exceptions in accordance with his request.  The case seems to have been fully and fairly tried.  *Bothwell* v. *Boston Elevated Railway,* 215 Mass. 467, 471.  Therefore, these exceptions are sustained and judgment is ordered for the defendant under G. L. c. 231, § 122.

*So ordered.*