ABRAHAM WEISS, administrator, *vs.* DIRECTOR GENERAL OF RAILROADS.

Suffolk.    March 11, 1924. — September 19, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, & CARROLL, JJ.

*Director General of Railroads. Federal Control Act. Practice, Civil,* Amendment, Finding by judge pro forma. *Jurisdiction. Assignment,* Of chose in action against Director General of Railroads, Validity.

In an action of contract or tort begun in a district court on May 15, 1919, against the New York, New Haven and Hartford Railroad Company for a loss occurring in November, 1918, the court has jurisdiction and power to allow a motion, filed by the plaintiff on January 14, 1922, to amend his writ and declaration by substituting the Director General of Railroads as defendant to conform to a decision by this court rendered on June 29, 1921, to the effect that the action could not be maintained against the railroad corporation.

The jurisdiction and power of the court to allow the amendment in the circumstances above described is not affected by a provision of a bill of lading under which the plaintiff made claim, that "Suits for loss, damage, or delay shall be instituted only within two years and one day after delivery of the property, or, in case of failure to make delivery, then within two years and one day after a reasonable time for delivery had elapsed."

Questions of amendment of process or pleadings commonly are recognized as questions of practice and not of substantive right.

Fundamental rights of parties or rights secured by laws of the United States cannot be jeopardized under the guise of practice or procedure. Per RUGG, C.J.

There is no disposition on the part of courts to exalt a mistake in procedure into an absolute right in contravention of the moral worth of a just claim.  Per RUGG, C.J.

The State practice as to amendments prevails in proceedings in State courts as to enforcement of provisions of the Federal Railroad Control Acts.

*Whether* the amendment above described rightly could have been allowed after February 28, 1922, was not determined.

The provisions of §§ 10, 12, of the Federal Control Act, 40 U. S. Sts. at Large, 451, disclose an intent that the business of the railroads and the litigation arising therefrom should go on under federal administration the same as before except as modified by express provision of the act and of proclamations pursuant thereto or by necessary implication; and therefore an action against the Director General of Railroads for loss of goods in transit is not barred by the provisions of U. S. Rev. Sts. § 3477, although it is brought by one to whom the claim had been assigned before the action was commenced.

The purpose manifested by the organization of the several courts of this Commonwealth is that a decision should be made of each case on its merits by each tribunal before which it may come, unless there is express provision of a different nature; and therefore the practice of making *pro forma* rulings or findings is justly subject to criticism.

CONTRACT OR TORT, originally brought against the New York, New Haven and Hartford Railroad Company by Nathan Nominsky as assignee of one Louis Cutler, for the value of a bale of rags alleged to have been delivered to the defendant for shipment to Cutler and to have been lost or destroyed and not delivered to Cutler.   Writ in the Municipal Court of the City of Boston dated May 15, 1919.

The action previously was before this court and, on June 29, 1921, in a decision reported in 239 Mass. 254, there was affirmed an order of the Appellate Division of the Municipal Court of the City of Boston dismissing a report by the trial judge who had found for the defendant on the ground that the action should have been brought against the Director General of Railroads instead of against the railroad corporation.

Proceedings relating to a motion by the plaintiff to amend the writ and declaration, filed after the rescript from this court, are described in the opinion.

On April 23, 1923, on suggestion of death of the plaintiff

Nominsky, the administrator of his estate was admitted as plaintiff to prosecute the action.

The action then was heard upon an agreed statement of facts. Material facts are described in the opinion. The defendant asked for the following rulings:

" 1. That this court is without jurisdiction to entertain this action against the above named defendant.

" 2. That the action against this defendant was not begun prior to the issuance of a summons directed to this defendant dated January 25, 1922.

" 3. That under the defendant's tariffs and schedules of rates one of the terms and conditions of the contract between the parties was that in case of loss or damage to the property any action brought to recover must be brought within two years and one day after a reasonable time for delivery of the property had elapsed.

" 4. That the action against this defendant was not in fact brought nor begun until long after two years and one day had elapsed after a reasonable time for delivery of the property.

" 5. That the plaintiff's action as against this defendant was not begun within the time required by the terms and conditions of the contract between the parties, and said action is, therefore, barred."

" 7. That under the provisions of General Order 50 and the Transportation Act of 1920, the court has no power to substitute in an action brought against the corporation the representative of the United States Railroad Administration as party defendant.

" 8. That the claim of one Louis Cutler which was assigned to plaintiff's intestate, was a claim not against the United States Railroad Administration but a claim against the New York, New Haven and Hartford Railroad Company.

" 9. That if the said assignment to the plaintiff's intestate be treated as an assignment of Cutler's claim against the United States Railroad Administration, nevertheless, said claim is a claim against the United States, and under § 3477 of the Revised Statutes of the United States said assignment is null and void and the plaintiff can not recover thereon in this action."

The trial judge denied the rulings above described, ruled in accordance with a request by the plaintiff, numbered 4, that the provisions of U. S. Rev. Sts. § 3477 were not a bar to the action, on the agreed statement of facts " found *pro forma* in contract for the plaintiff " in the sum of $517.05 and reported the action to the Appellate Division. The Appellate Division ordered: " Plaintiff's request 4 wrongly allowed — judgment for defendant." The plaintiff appealed.

*J. W. Keith,* for the plaintiff.

*A. W. Blackman,* for the defendant.

RUGG, C.J. This is an action begun on May 15, 1919, wherein the New York, New Haven and Hartford Railroad Company was named as defendant. The cause of action arises at common law and not under any statute. It is to recover compensation for the loss of merchandise while in course of transportation by a common carrier. The shipment and loss occurred in November, 1918. A reasonable time for the delivery of the merchandise was not later than early in December, 1918. The case has been before us under the name *Nominsky* v. *New York, New Haven & Hartford Railroad,* 239 Mass. 254. It then was decided on June 29, 1921, that the action could not be maintained against that defendant because under the Act of Congress and proclamation of the President the complete possession and control of the railroad was vested in the United States and all actions of this nature were maintainable only against the Director General of Railroads. On January 14, 1922, the plaintiff moved to amend his writ and declaration by substituting James C. Davis, Agent and Director General of Railroads, as defendant in place of the defendant originally named. That motion was allowed by the court and on January 25, 1922, process issued summoning Mr. Davis to appear. He filed pleadings appropriate to contest the jurisdiction of the court over him.

The defendant argues that it was beyond the power of the court to allow the amendment. This point is concluded against his contentions by the principle of several recent decisions of this court. *L. L. Cohen & Co. Inc.* v. *Director General of Railroads,* 247 Mass. 259. *Genga* v. *Director*

*General of Railroads,* 243 Mass. 101, 110, 111. *Ætna Mills v. Director General of Railroads,* 242 Mass. 255. *Sack v. Director General of Railroads,* 245 Mass. 114, 118. *Director General of Railroads v. Eastern Steamship Lines, Inc.* 245 Mass. 385, 396. It is unnecessary to repeat the reasoning of those decisions in several of which the subject is discussed at large.

No sound distinction between those decisions and the case at bar can be founded upon the circumstance that the bill of lading issued in accordance with law for the lost merchandise contained the provision that " Suits for loss, damage, or delay shall be instituted only within two years and one day after delivery of the property, or, in case of failure to make delivery, then within two years and one day after a reasonable time for delivery had elapsed." If the present action had been first instituted when the summons issued to Mr. Davis, it would not have been instituted seasonably under the terms of the bill of lading. Under the general practice prevalent in this Commonwealth such amendment is commonly allowed, unless special facts exist rendering it inequitable. No such facts are present in the case at bar. The fact that some limitation would bar a new action and that the claim would be lost if an amendment is not allowed has often been considered an additional reason for allowing an amendment, if in other respects permissible. *McLaughlin v. West End Street Railway,* 186 Mass. 150, and cases there collected. *Tracy v. Boston & Northern Street Railway,* 204 Mass. 13, 16. *Genga v. Director General of Railroads,* 243 Mass. 101, 104, and cases there cited. The bill of lading in the case at bar to the ordinary business mind would appear to be issued in the name of the railroad company, although under the law it was issued by the Director General of Railroads. It would be violative of an innate sense of justice to hold that, when action had been instituted seasonably against the railroad company thus appearing on the face of the bill of lading to be liable, the Director General, actually liable on that bill of lading issued by him, could not be brought in as a party defendant by amendment and thus escape all liability. Fundamental

rights of parties or rights secured by laws of the United States cannot be jeopardized under the guise of practice or procedure. *Davis* v. *L. N. Dantzler Lumber Co.* 261 U. S. 280. *Wabash Railway* v. *Elliott,* 261 U. S. 457. *North Carolina Railroad* v. *Lee,* 260 U. S. 16. *Davis* v. *Wechsler,* 263 U. S. 22, 24. *Commonwealth* v. *Donnelly,* 246 Mass. 507, 509. Questions of amendment of process or pleadings commonly are recognized as practice and not substantive right. Moreover, there is no disposition on the part of courts to exalt a mistake in procedure into an absolute right in contravention of " the moral worth " of a just claim. See *Danforth* v. *Groton Water Co.* 178 Mass. 472, 477. We are not aware of any provision of the Acts of Congress or of proclamations or general orders issued pursuant to them, or of any decision of the Supreme Court of the United States, and none has been called to our attention, which forbids expressly or by implication the allowance of such an amendment under the conditions here disclosed.

We understand and have decided in the cases already cited that the State practice as to amendments prevails in proceedings in State courts as to enforcement of provisions of the Federal Railroad Control Acts. We hold that there was no error of law in the allowance of the amendment.

The case at bar does not appear to us to be governed by the denial of petitions for writs of certiorari in *Fischer* v. *Wabash Railway,* 263 U. S. 706; 235 N. Y. 568, and in *Chrisp* v. *Davis,* 263 U. S. 710, *Davis* v. *Chrisp,* 159 Ark. 335. See also *Fahey* v. *Davis,* 224 Mich. 371. Those decisions all seem to be founded upon State practice more or less divergent from that of this Commonwealth.

The case at bar appears to us to be distinguishable from *Payne* v. *Industrial Board of Illinois,* 258 U. S. 613, *Payne* v. *Stevens,* 260 U. S. 705, and *United States Railway Administration* v. *Slatinka,* 260 U. S. 747, where a different statute was involved and a different principle was controlling.

The question is not presented in the case at bar whether such an amendment could rightly be allowed after February 28, 1922, bringing in as a party defendant the agent designated under § 206 (a) of the Transportation Act of February

28, 1920, c. 91; 41 U. S. Sts. at Large, 461, as amended by the act of March 3, 1923, c. 233; 42 U. S. Sts. at Large, 1443.

The claim here sought to be enforced is to recover compensation for loss of goods destroyed while in the possession of the railroad administration under the control of the Director General as common carrier and in the course of transportation from Brooklyn, New York, to Beverly, Massachusetts. The shipment, according to the bill of lading, was consigned to the order of one Cutler, the owner. Cutler assigned his claim, arising from the loss of the goods while in transit, to one Nominsky, who instituted the present action, now prosecuted by his administrator. The defendant contends that the plaintiff's intestate, having acquired the claim by assignment, cannot prosecute action thereon against the United States of America. That contention is founded on § 3477 of the U. S. Rev. Sts. That section is in these words: " All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same."

That section has been before the Supreme Court of the United States for construction in numerous cases. All of them theretofore decided were reviewed and analyzed in *Jernegan* v. *Osborn*, 155 Mass. 207, and *Thayer* v. *Pressey*, 175 Mass. 225. That ground need not be traversed again.

Since those decisions several adjudications touching that section have been made. In *Nutt* v. *Knut*, 200 U. S. 12, 20, it was held that a contract between a claimant against the United States for damages founded on appropriation of his property by its officers and his attorney, purporting to give the latter a lien for his services upon the amount to be recovered, was to that extent void under the statute, whose " obvious purpose, in part, was to forbid any one who was a stranger to the original transaction to come between the claimant and the Government, prior to the allowance of a claim, and who, in asserting his own interest or share in the claim, pending its examination, might embarrass the conduct of the business on the part of the officers of the Government." *Calhoun* v. *Massie*, 253 U. S. 170, 174. It was said in *Mc-Gowan* v. *Parish*, 237 U. S. 285, 294, as the result of previous judicial declarations, that " the statute was intended solely for the protection of the Government and its officers during the adjustment of claims, and that, after allowance, the protection may be invoked or waived, as they in their judgment deem proper." In *Houston* v. *Ormes*, 252 U. S. 469, 473, it was decided that the section was not an obstacle to the maintenance of a suit against the Secretary of the Treasury and the Treasurer of the United States to establish an equitable lien upon a fund appropriated by Congress to pay a claim found to be due by the Court of Claims, the court saying, " As has been held many times, the object of Congress in this legislation was to protect the Government, not the claimant; and it does not stand in the way of giving effect to an assignment by operation of law after the claim has been allowed." In *Seaboard Air Line Railway* v. *United States*, 256 U. S. 655, 657, exceptions to the operation of the section were extended by holding that it did not apply to the transfer of claims resulting from the consolidation of two railroad corporations. See, also, 22 Opinions of Attorneys General of the United States, 637.

While the words of said § 3477 are broad and are construed so as to effectuate the purpose of its framers, it is manifest from the decisions that numerous exceptions exist to their apparently unrestricted sweep, arising from the inherent

reasonableness which must be attributed, so far as possible, to every act of the legislative department of government.

The pertinent provisions of the Federal Control Act approved March 21, 1918, c. 25; 40 U. S. Sts. at Large, 451, are § 10, to the effect that " carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other Act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government," and § 12, to the effect that " moneys and other property derived from the operation of the carriers during Federal control are hereby declared to be the property of the United States. Unless otherwise directed by the President, such moneys shall not be covered into the Treasury, but such moneys and property shall remain in the custody of the same officers, and the accounting thereof shall be in the same manner and form as before Federal control. Disbursements therefrom shall, without further appropriation, be made in the same manner as before Federal control."

We are of opinion that these provisions of the Federal Control Act disclose an intent that the business of the railroads and the litigation arising therefrom should go on under federal administration the same as before except as modified by express provision of the act and of proclamations pursuant thereto or by necessary implication. The maintenance of an action in his own name by the assignee of a nonnegotiable legal chose in action has been permissible under our laws for more than a quarter of a century. G. L. c. 231, § 5. It is likely that similar statutes have been enacted in other States. The defence here put forward does not seem to depend upon any declared or reasonably necessary policy in the operation of the railroads for the protection of the United States.

The formalities established with respect to disbursements of money from the Treasury of the United States are specifically made inapplicable by the statute to the operation of the railroads by the Director General. The receipt of the income and the payment of the expenses of railroad operation under federal control were to be and remain as before. The provision that actions at law might be brought against carriers under federal control " as now provided by law " appears to authorize actions by assignees of nonnegotiable legal choses in action, since such actions were authorized at the time of the enactment of the Federal Control Act. The defence here urged depends upon the ground that the carrier was an instrumentality or agency of the federal government. Such defence is forbidden by the express words of § 10 of the act. While the question is not free from difficulty, we are of opinion that said § 3477 is not applicable as a bar to the present action.

This conclusion seems to us to be supported by the reasoning of the opinion in *Missouri Pacific Railroad* v. *Ault*, 256 U. S. 554, 559. It is in accordance with express decisions in *Morgan* v. *Hines*, 65 Mont. 306, 315, *Paradise Land & Live Stock Co.* v. *Davis*, 60 Utah, 189, 193, 194, and *Parrington* v. *Davis*, 285 Fed. Rep. 741. See *Goodwin Preserving Co.* v. *Davis*, 201 Ky. 646. There appears to be nothing contrary to this result in *Mechanics' Bank & Trust Co.* v. *Knoxville, Sevierville & Eastern Railway*, 148 Tenn. 113.

It follows that the plaintiff's request that the provisions of said § 3477 are not a bar to this action was given rightly by the trial judge.

It is stated in the record that the " court on the agreed statement of facts found *pro forma* in contract for the plaintiff." The practice of making *pro forma* rulings or findings has been made frequently and justly the subject of criticism. *Blake* v. *Pegram*, 101 Mass. 592, 597. *Parker* v. *Parker*, 118 Mass. 110. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87, 89. *United States* v. *Gleeson*, 124 U. S. 255. *William Cramp & Sons Ship & Engine Building Co.* v. *International Curtiss Marine Turbine Co.* 228 U. S. 645. *Ex parte Harley-Davidson Motor Co.* 259 U. S. 414. Parties are entitled to

the exercise of the judicial faculty by the magistrate before whom a case is presented. Even a positive statement of intention by a party, in the event of an adverse decision, to take a case to another tribunal is no justification for a decision or ruling as a mere matter of form when a decision or ruling is required. A decision resting upon the application of sound learning and judicial experience may be accepted by a defeated party in the calmness of reflection even when a more captious attitude of mind precedes such decision. The purpose manifested by the organization of the several courts of this Commonwealth is that a decision should be made of each case on its merits by each tribunal before which it may come, unless there is express provision of different nature.

The order of the Appellate Division is reversed. Judgment is. to be entered for the plaintiff.

*So ordered.*