NATHAN NOMINSKY *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Suffolk.    March 25, 1921. — June 29, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Director General of Railroads.    Federal Control Act.    Practice, Civil,* Parties.

Orders of the successive Directors General of Railroads numbered 50 and 50-A., directing that actions at law, suits in equity and proceedings in admiralty brought in any court "based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceeding but for Federal control might have been brought against the carrier company, should be brought against" the Director General of Railroads "and not otherwise," were valid exercises of authority conferred by the federal control act (40 U. S. Sts at Large, 451) and the proclamation of the President of the United States of March 29, 1918; and an action at law thereafter brought, in which a railroad corporation subject to the federal control act is named as defendant, cannot be maintained.

CONTRACT OR TORT by the assignee of one Louis Cutler, for the value of a bale of rags alleged to have been delivered to the defendant for shipment to Cutler and to have been lost or destroyed and not delivered to Cutler. Writ in the Municipal Court of the City of Boston dated May 15, 1919.

The answer of the defendant was a general denial and an allegation of contributory negligence on the part of the plaintiff.

In the Municipal Court the trial judge ruled "as a matter of law

that the Acts of Congress, March 21, 1918, the proclamations of the President of December 26, 1917, and of April 16, 1918, and the orders of the Director General of Railroads, numbered 50 and 50-A., are the law of this cause," found for the defendant, and reported the action to the Appellate Division, who dismissed the report. The plaintiff appealed.

*J. W. Keith,* for the plaintiff.

*A. W. Blackman,* for the defendant.

DE COURCY, J. This is an action to recover the value of a bale of rags, claimed to have been damaged or destroyed in transit. The shipment was made on November 21, 1918; and the action was brought in May, 1919. The controlling question raised is whether the action should have been brought against the Director General of Railroads.

In his proclamation of December 26, 1917, whereby the President took possession and control of the transportation systems of the country, and appointed William G. McAdoo Director General of Railroads, it was provided: " Said Director may perform the duties imposed upon him, so long and to such extent as he shall determine, through the Boards of Directors, Receivers, officers, and employees of said systems of transportation. Until and except so far as said Director shall from time to time by general or special orders otherwise provide, the Boards of Directors, Receivers, officers, and employees of the various transportation systems shall continue the operation thereof in the usual and ordinary course of the business of common carriers, in the names of their respective companies." This left it uncertain whether the carriers were left in general control of their properties, and liable as formerly for occurrences in the course of their operation, or whether they were excluded from the control of the physical properties and consequent liabilities during federal control. Then followed the Federal Control act of March 21, 1918, c. 25; 40 U. S. Sts. at Large, 451. In § 10 of that act, Congress provided: " carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law, except in so far as may be inconsistent with the provisions of this Act or any other Act applicable to such Federal control or with any order of the President. Actions at law or suits in equity may be brought by and against such carriers and judgments

rendered as now provided by law; and in any action at law or
suit in equity against the carrier, no defense shall be made thereto
upon the ground that the carrier is an instrumentality or agency
of the Federal Government. . . . But no process, mesne or final,
shall be levied against any property under such Federal control."
It seems to have been generally considered that the carrier was
the one to be sued under this provision.

On October 28, 1918, the Director General issued his General
Order No. 50. After referring therein to the proclamations of the
President, and the federal control act, it recites: " Whereas since
the Director General assumed control of said systems of tranporta-
tion, suits are being brought and judgments and decrees rendered
against carrier corporations on matters based on causes of action
arising during Federal control for which the said carrier corpora-
tions are not responsible, and it is right and proper that the actions,
suits and proceedings hereinafter referred to, based on causes of
action arising during or out of Federal control should be brought
directly against the said Director General of Railroads and not
against said corporations:

"It is therefore ordered, that actions at law, suits in equity, and
proceedings in admiralty hereafter brought in any court based
on contract, binding upon the Director General of Railroads, claim
for death or injury to person, or for loss and damage to property,
arising since December 31, 1917, and growing out of the possession,
use, control or operation of any railroad or system of transporta-
tion by the Director General of Railroads, which action, suit, or
proceeding but for Federal control might have been brought against
the carrier company, shall be brought against William G. McAdoo,
Director General of Railroads, and not otherwise; provided, how-
ever, that this order shall not apply to actions, suits, or proceed-
ings for the recovery of fines, penalties, and forfeitures." It also
provided that the pleadings in actions and suits pending against
carriers, for a cause of action arising since December 31, 1917,
based upon a cause of action arising from or out of the operating
of any railroad or other carrier, might be amended by substituting
the Director General of Railroads for the carrier company as party
defendant and dismissing the company therefrom. General Order
No. 50-A., issued by Mr. McAdoo's successor, Mr. Hines, is to the
same effect.

The manifest inconsistency between § 10 of the control act and General Order No. 50, as to the proper party defendant, has given rise to a sharp conflict in the decisions of the courts with reference to the validity and construction of the statute and order. See cases collected in notes 4 A. L. R. 1695; 8 A. L. R. 973; 10 A. L. R. 964, and 11 A. L. R. 1453. A majority of the cases have held that the final effect of the congressional legislation and the executive proclamations and orders was, not merely to mobilize under one head the corporations engaged in the business of transportation, leaving unchanged the control and liability of the carriers, except as modified by the federal control of their transportation facilities; but that the President and his Director General were given exclusive control and operation of the physical properties and of the organization, including the officers and employees who transacted the business in the name of the companies. This latter construction finds support in the provisions of the federal control act. As was said by Mr. Chief Justice White in *Northern Pacific Railway v. North Dakota,* 250 U. S. 135, 148: " No elaboration could make clearer than do the Act of Congress of 1916, the proclamation of the President exerting the powers given, and the Act of 1918 dealing with the situation created by the exercise of such authority, that no divided but a complete possession and control were given the United States for all purposes as to the railroads in question. . . . How can any other conclusion be reached if consideration be given the comprehensive provisions concerning the administration by the United States of the property which it was authorized to take, the financial obligations under which it came and all the other duties and exactions which the act imposed, contemplating one control, one administration, one power for the accomplishment of the one purpose, the complete possession by governmental authority to replace for the period provided the private ownership theretofore existing?" See also *Dakota Central Telephone Co.* v. *South Dakota,* 250 U. S. 163; *Public Service Commissioners* v. *New England Telephone & Telegraph Co.* 232 Mass. 465; *West* v. *New York, New Haven & Hartford Railroad,* 233 Mass. 162.

Whatever uncertainty may exist as to the interpretation of other provisions in the orders of the Director General, the language of Order No. 50 is explicit that in a case like the present, which arose after that order went into effect, the action should

have been brought against the Director General, and not against the railroad corporation. And in our opinion that order was a valid one. The plan of making the carrier nominal defendant, as apparently contemplated by § 10 of the control act, was not to be applicable when it should be inconsistent with "the provisions of this Act or any other Act applicable to such Federal control or with any order of the President." Section 8 of the act provided that "the President may execute any of the powers herein and heretofore granted him with relation to Federal control through such agencies as he may determine." In said proclamation of December 26, 1917, assuming control of the railroads, it was provided that "suits may be brought by and against said carriers and judgments rendered as hitherto until and except so far as said Director may, by general or special orders, otherwise determine." In his proclamation of March 29, following the enactment of the control act, the President expressly authorized the Director General of Railroads, among other things, "to issue any and all orders which may in any way be found necessary and expedient in connection with the Federal control of systems of transportation, railroads, and inland waterways as fully in all respects as the President is authorized to do, and generally to do and perform all and singular all acts and things and to exercise all and singular the powers and duties which in and by the said act, or any other act in relation to the subject hereof, the President is authorized to do and perform." Orders number 50 and 50-A., of the Director General were in effect the orders of the President, within the meaning of § 10 of the control act. They settled the question of how actions and suits should be brought, which was left in doubt by said section; and made the Director General of Railroads, who had full and exclusive control of the physical properties and the employees of the railroad, the proper party to be named as defendant.

Since this opinion was adopted there has been published the decision of the Supreme Court of the United States in *Missouri Pacific Railroad* v. *Ault*, 256 U. S. 554, which sustains our conclusion as to the validity of Order No. 50. In the language of the court, "As the Federal Control Act did not impose any liability upon the companies on any cause of action arising out of the operation of their systems of transportation by the

Government, the provisions in Order No. 50 authorizing the substitution of the Director General as defendant in suits then pending was within its power."

*Order dismissing report affirmed.*