L. L. COHEN AND COMPANY, INC. *vs.* DIRECTOR GENERAL OF RAILROADS.

Bristol. October 22, 1923. — January 4, 1924.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Jurisdiction. Federal Control of Railroads. Director General of Railroads. Railroad. Practice, Civil,* Amendment. *Carrier,* Of goods. *Evidence,* Presumptions and burden of proof.

If, during the time when the United States Director General of Railroads was in control of a railroad in this Commonwealth, an action for damages resulting from the conduct of the business of the railroad was brought in this Commonwealth against the railroad corporation instead of against the Director General of Railroads, an amendment may be allowed substituting the Director General of Railroads for the railroad corporation as defendant.

Where it appears that the action above described was begun while the Director General was in control of the railroad, § 206 (a) of the Transportation Act of 1920 is not a bar to the allowance of the amendment above described, although it was not presented until more than two years after the termination of government control.

The Director General of Railroads in 1918 received a shipment described in the bill of lading as "one carload scrap iron" for transportation to Pennsylvania. The shipper loaded the shipment into a "sideboard flat" car and different grades of the scrap iron were separated carefully in the car and, if it had not been reloaded, the shipment would have gone through to its destination without damage. While it was on the lines of a system other than that on which it started, a transfer of it became reasonably necessary and it was loaded into another car not adapted to the carriage of scrap iron. In the transfer, fine scrap was loaded on top and mixed in with other scrap so that the lading became unmarketable and worthless and the assignee refused to accept delivery. The shipper refused to accept return of the goods and brought an action against the Director General of Railroads. By order of the trial judge, a verdict for the defendant was entered. *Held,* that

(1) The mere description in the bill of lading, "one carload scrap iron," did not necessarily import that the contents of the car could be mixed or mingled without damage;

(2) The shipper as one of the contracting parties had a right to judge for himself what arrangement in the car was best adapted for the carriage of his goods;

(3) The acceptance by the defendant of the carload with full knowledge on the part of his employees of the nature and arrangement of its contents well might have been found to charge him with notice that the division of the contents was not random but was made by the shipper with a definite design, and that the shipment should be handled accordingly;

(4) There was evidence for the jury that the damage suffered by the plaintiff was due to the failure of the defendant to provide a suitable car or to the negligence of his employees in unloading and reloading the shipment, or to both;

(5) If it was found that the goods were received for shipment in good order, the burden was on the defendant to prove that the damaged condition in which they arrived was due to causes for which he was not legally responsible;

(6) A verdict for the plaintiff would have been warranted.

CONTRACT for breach of a carrier's agreement safely and securely to convey a carload of scrap iron. Writ dated January 9, 1920.

The defendant described in the writ was "The New York, New Haven and Hartford Railroad Company, . . . controlled and operated by the United States Railroad Administration." The action was entered in the Superior Court on February 2, 1920. The New York, New Haven and Hartford Railroad Company on February 17, 1920, filed an answer setting up a general denial and alleging contributory negligence of the plaintiff. On September 21, 1922, the plaintiff filed a motion to strike from the writ and declaration the name "New York, New Haven and Hartford Railroad Company" and substitute therefor "James C. Davis, Agent, and the Director General of Railroads in possession and control of the New York, New Haven and Hartford Railroad Company, as party defendant." The motion was allowed by *Callahan,* J., and an order of notice to the new defendant was issued and was served upon him. On November 7, 1922, James C. Davis, described in the motion, appeared specially and moved that the action be dismissed on the following grounds:

" 1. That this [Superior] court is without jurisdiction to entertain this action against the above named defendant.

" 2. That the issuance and service of said writ summoning the above named defendant to appear and answer are null and void because in violation of and in conflict with § 206

of the Act of Congress of February 28, 1920, known as the Transportation Act.

"3. That this proceeding against the above named defendant was not instituted within the time prescribed by the said section of the Transportation Act.

"4. That this action as against the above named defendant was not instituted in the manner provided by the above named section of the Transportation Act.

"5. That no service has been made upon said defendant as required by the Transportation Act.

"6. That no service has been made upon said defendant in accordance with the provisions of the General Laws of this Commonwealth, and that under said laws this Court has no jurisdiction to entertain this action against said defendant.

"7. That the provisions of the General Laws of said Commonwealth under authority of which the above named defendant is summoned as party defendant in this action, if they purport to authorize the proceedings herein, are repugnant to the provisions of the Transportation Act and, therefore, said proceedings are null and void and without authority of law.

"8. That it appears from the record of the return on the writ herein issued to the above named defendant that no service of said writ has been made upon the above named defendant in accordance with the provisions of the laws of Massachusetts and, therefore, such service is null and void."

The motion was heard by *Dubuque*, J., and was denied. The defendant Davis alleged exceptions.

Thereafter the action was tried before *Morton*, J. Material evidence at the trial is described in the opinion. By order of the judge, a verdict was entered for the defendant. The judge then, at the request of the parties, reported the case to this court upon their agreement that, if the exception to the ruling by *Dubuque*, J., was sustained or, if this court sustained the ruling by *Morton*, J., the verdict for the defendant should stand; and if this court overruled the exception to the ruling by *Dubuque*, J., and sustained the plaintiff's exception to the ruling by *Morton*, J., a verdict for the plaintiff should be ordered in the sum of $400.

The case was argued at the bar in October, 1923, before *Rugg*, C.J., *DeCourcy, Pierce & Jenney*, JJ., and afterwards was submitted on briefs to all the then Justices.

*L. Swig*, for the plaintiff.

*A. W. Blackman*, for the defendant.

DeCourcy, J.   On December 13, 1918, the plaintiff shipped from Taunton, Massachusetts, " one carload scrap iron," consigned to Midvale Steel and Ordnance Company, Coatesville, Pennsylvania.   A reasonable time for delivery at said destination was not later than two months.   The shipment was loaded into a " sideboard flat " car: that is, a flat car open at the top, with wooden sides and ends about four feet in height.   The plaintiff placed at one end of the car sheet iron scrap, which was tied up in bundles; at the other end skeleton scrap, so called, which was tied up in bales; and in the middle of the car small particles, known as tack or nail scrap.   While the car was in transit and on the lines of the Pennsylvania system, it became reasonably necessary to transfer the contents.   The iron was loaded into a battleship hopper car, which, it could be found, was not adapted to the carriage of scrap iron; and in the transfer the fine scrap was loaded on top and mixed in with the other material, so as to render the lading unmarketable and worthless.   The consignee refused to accept delivery; and the plaintiff declined to take it on its return to Taunton, about February 19, 1919.

The plaintiff, by writ dated January 9, 1920, brought an action of contract against the New York, New Haven and Hartford Railroad Company, " controlled and operated by the United States Railroad Administration."   The plaintiff's motion to substitute James C. Davis, Agent, as party defendant, was allowed in September, 1922.   On October 7, 1922, an order of notice issued and was served upon one Astley, the division superintendent; service on whom would have been good in an action against said railroad company. The defendant Davis appeared specially on November 6, 1922, and filed a motion to dismiss.   This motion was denied, subject to the defendant's exception.   At the subsequent trial on the merits, the judge directed a verdict for the defendant and reported the case to this court.

As the cause of action in this case arose during federal control of the railroad, it is now settled that the action should have been brought against the government and not against the railroad company. *Missouri Pacific Railroad* v. *Ault*, 256 U. S. 554. *Nominsky* v. *New York, New Haven & Hartford Railroad*, 239 Mass. 254. The contention of the defendant, that the representative of the government cannot be made a party by substitution in any case where the action originally was wrongly brought against the railroad company, is contrary to recent decisions of this court. *Aetna Mills* v. *Director General of Railroads*, 242 Mass. 255. *Genga* v. *Director General of Railroads*, 243 Mass. 101, 110, 111. *Director General of Railroads* v. *Eastern Steamship Lines, Inc.* 245 Mass. 385.

The defendant further contends that in no event can substitution be had later than two years after the end of government control. It is true that § 206 (a) of transportation Act, 1920 (41 U. S. Sts. at Large, 461), provides that after the termination of federal control, actions arising out of the operation of the railroad while under such control should be brought " within the periods of limitation now prescribed by State or Federal statutes but not later than two years from the date of the passage of this Act." But that subsection purports to deal only with the time within which actions may be commenced, where the cause thereof arose during federal control and no action was brought during that period. In the case at bar, the action was begun January 9, 1920, almost two months before the termination of federal control. The subsection of the Transportation Act here applicable is 206 (d), which provides that such actions " pending at the termination of Federal control shall not abate by reason of such termination, but may be prosecuted to final judgment, substituting the agent designated by the President under subdivision (a)." This subsection contains no time limitation. *De Witt* v. *New York Central Railroad*, 196 N. Y. Supp. 870. *Henry* v. *New York Central Railroad*, 204 App. Div. (N.Y.) 491, 494. *Hanlon* v. *Davis*, 276 Penn. St. 113, 118. Even if § 206 (a) were applicable, the Massachusetts law as to amendments does not regard such

substitution as the commencement of a new action, and it would have been within the discretion of the trial court to allow the substitution despite the fact that more than two years had elapsed since the termination of Federal control. *Aetna Mills* v. *Director General of Railroads, supra. Genga* v. *Director General of Railroads, supra.* G. L. c. 231, § 138. In view of the Act of March 3, 1923, (U. S. St. 1923, c. 233,) amending Transportation Act 1920, § 206, we deem it unnecessary to consider the Act of Congress, February 8, 1899 (U. S. Comp. St. § 1594), limiting the time for substitution of a successor in office. See *Sack* v. *Davis*, 245 Mass. 114; *Director General of Railroads* v. *Eastern Steamship Lines, Inc. supra.* We are of opinion that the motion to dismiss was denied rightly

As to the merits: On the facts shown the defendant was responsible for the damage to the shipment unless he was relieved from the common law liability by the terms of the bill of lading, or the damage was due to the act or default of the plaintiff itself. The bill of lading is a receipt of the quantity and description of the goods shipped, and a contract to transport and deliver them as specified in the instrument. *Hastings* v. *Pepper*, 11 Pick. 41. The mere description " one carload scrap iron " did not necessarily import that the contents of the car could be mixed or mingled without damage. The owner as one of the contracting parties had a right to judge for itself what arrangement in the car was best adapted for the carriage of its goods. And, while the defendant presumably might have refused to accept the iron for shipment if not satisfied with the packing and position adopted by the shipper, he did not do so, but accepted the carload with full knowledge on the part of his employees of the nature and arrangement of its contents. *Hastings* v. *Pepper, supra.* The manner in which the loose scrap was confined between bundles of sheet iron scrap and bales of skeleton scrap might well charge the carrier with notice that the division was not random but made with a definite design, and that he should handle the shipment accordingly. *Noble* v. *American Express Co.* 234 Mass. 536. *Colbath* v. *Bangor & Aroostook Railroad*, 105 Maine, 379. In

fact the plaintiff loaded the car, and presumably it was intended that the consignee, and not the defendant, should unload it. So far as appears the shipment as arranged would have gone through without damage but for an intermediate reloading of this bulky freight, weighing more than a hundred thousand pounds: a reloading which apparently was not contemplated by the parties. There was evidence for the jury that the damage complained of was due to the failure of the defendant to provide a suitable car, or the negligence of the employees in unloading and reloading, or both. *Pratt* v. *Ogdensburg & Lake Champlain Railroad*, 102 Mass. 557, 567. And, if the goods were received for shipment in good order, the burden was on the defendant to prove that their damaged condition on arrival was due to causes for which he was not legally responsible. *Hastings* v. *Pepper, supra. Ideal Lumber Goods Co.* v. *Eastern Steamship Corp.* 220 Mass. 133, 135.

The case should have been submitted to the jury. In accordance with the report judgment is to be entered for the plaintiff in the sum of $400.

*So ordered.*