DAVIS, Agent, v. PRESTON.    (No. 1112.)*

(Court of Civil Appeals of Texas.  Beaumont.
     May 15, 1924.  Rehearing Denied
             May 28, 1924.)

1. Railroads ⊚⟲5½, New, vol. 6A Key-No. Se-
ries—Substitution of federal agent as defend-
ant held proper.

Under Winslow Act (Act Cong. March 3,
1923), amending Transportation Act 1920, the
substitution of the Federal Agent for Director
General of Railroads, more than two years
after cessation of federal control, held not er-
ror, notwithstanding Transportation Act 1920,
§ 206, subd. (a), being U. S. Comp. St. Ann.
Supp. 1923, § 10071¼cc, subd. (a), and U. S.
Comp. St. § 1594, providing for substitution
within 12 months after right thereto accrues.

2. Limitation of actions ⊚⟲125—Action for
husband's death, brought by wife in individual
capacity, in which she made herself plaintiff
as administratrix, more than two years after
death, held not barred by limitations.

Action for death of husband, brought by
wife individually, but in which she was permit-
ted by amendment to appear in representative
capacity as husband's administratrix, was not
barred by limitation, though she did not make
herself plaintiff in representative capacity un-
til more than two years after husband's death.

3. Appeal and error ⊚⟲996—Verdict, supported
by reasonable inferences arising on admitted
facts, sustained.

Verdict supported by reasonable inferences
arising on admitted facts will be sustained,
though there is no material conflict in the evi-
dence.

4. Master and servant ⊚⟲276(2)—Negligence
and proximate cause of employee's death may
be established by circumstantial evidence.

Negligence of railroad in leaving steel rails
in switchyard, and proximate relation to death
of switchman run over by train, may be estab-
lished by circumstantial evidence.

5. Master and servant ⊚⟲129(1)—Negligent
employer liable, though other causes contrib-
uted to injury.

Where employer's negligence was a con-
tributing cause to employee's death, the em-
ployer is liable, though other causes not aris-
ing on employer's negligence may have con-
tributed.

6. Master and servant ⊚⟲276(2)—Prima facie
case made by proving employer's negligence
and proximate cause.

Plaintiff establishes prima facie case by
proving negligence of railroad, and proximate
relation of negligence to death of employee run
over by train, and is not required to exclude
all other circumstances that might have caused
his death.

7. Master and servant ⊚⟲276(11)—Evidence
showing, with equal probability, injury by
means other than those alleged insufficient.

Verdict finding railroad liable for death of
employee cannot be sustained, if the evidence
shows with equal probability that death was
caused by other means than those alleged.

8. Master and servant ⊚⟲278(7)—Finding that
negligence in leaving rails in switchyard caus-
ed switchman's death sustained.

Circumstantial evidence held to sustain a
verdict finding that railroad was negligent in
leaving rails in switchyard, and that switchman
tripped over rails and fell under moving train.

Appeal from District Court, Harris Coun-
ty; J. D. Harvey, Judge.

Suit by Mrs. Mary Preston, for whom Mrs.
Mary Preston, as administratrix, was sub-
stituted, against Walker D. Hines, Director
General of Railroads, for whom James C.
Davis, as Agent, was substituted.  Judgment
for plaintiff, and defendant appeals.  Af-
firmed.

Andrews, Streetman, Logue & Mobley, of
Houston, for appellant.

McDonald & Wayman, of Galveston, and
Cole & Cole, of Houston, for appellee.

WALKER, J.  This suit was instituted on
the 27th day of February, A. D. 1920, by ap-
pellee, in her individual capacity, against
Walker D. Hines, Director General of Rail-
roads, to recover damages for the death of
her husband, which occurred on or about
September 15, 1919, occasioned, on her al-
legations, by the negligence of the defendant
in leaving certain steel rails in his switch-
yard.  On the 31st day of May, 1922, in
her individual capacity as plaintiff in this
case, she filed and presented a motion to sub-
stitute James C. Davis, Federal Agent, as de-
fendant, in lieu of Walker D. Hines, Direc-
tor General.  When the suit was filed, cita-
tion duly issued to and was served on the
Director General in the manner provided by
law.  While permission had been granted to
substitute James C. Davis, as Federal Agent,
no pleading was filed against him as such
until November 27, 1922, on the eve of the
trial of this case.  Her petition, filed on
that date, was in her individual right, and
predicated the damages claimed upon sub-
stantially the same allegations as contained
in the original petition filed against the Di-
rector General.

On November 28, 1922, after the evidence
was all in, the plaintiff presented a motion
requesting the court to permit her to file a
trial amendment for the purpose of appear-
ing as administratrix of the estate of her
deceased husband, W. P. Preston, which per-
mission being granted, the amendment was
filed, and the suit proceeded to final judg-
ment in her favor, as such administratrix,
against James C. Davis, as Federal Agent.
This was her first appearance as adminis-
tratrix in the case.

[1] It was provided by Congress that fed-
eral control of railroads should terminate
as of date March 1, 1920.  This act provided
that suits pending against the Director Gen-

---

eral at the termination of federal control should not abate, "but may be prosecuted to final judgment, substituting the Agent designated by the President under subdivision (a)." Transportation Act 1920, § 206, subd. (d), being U. S. Comp. St. Ann. Supp. 1923, § 10071¼cc, subd. (d). Section 1594, U. S. Comp. St. provides that such substitutions as provided for in the quoted section of the Transportation Act must be made within 12 months after the right accrues. Le Crone v. McAdoo, 253 U. S. 217, 219, 40 Sup. Ct. 510, 64 L. Ed. 798. Because of this construction placed by the Supreme Court upon the Transportation Act, appellant now insists that the court erred in permitting appellee to substitute the Federal Agent as defendant more than two years after the cessation of federal control. We think that this ruling of the court was justified by the Winslow Act (42 Stat. 1443), passed by Congress on the 3d day of March, 1923, as an amendment to the Transportation Act of 1920. The Winslow Act specially mentioned section 1594, and states that the purpose of the act was to relieve litigants of the provisions of section 1594, and further:

"Actions, suits, proceedings, and reparation claims, of the character described in subdivision (a), (c), or (d), properly commenced within the period of limitation prescribed, and pending at the time this subdivision takes effect, shall not abate by reason of the death, expiration of term of office, retirement, resignation, or removal from office of the Director General of Railroads or the Agent designated under subdivision (a), but may (despite the provisions of the act entitled 'An act to prevent the abatement of certain actions,' approved February 8, 1899), be prosecuted to final judgment, decree, or award, substituting at any time before satisfaction of such final judgment, decree, or award the agent designated by the President then in office."

Appellee's cause of action comes within the provisions of this act. This provision of the Winslow Act has been directly construed as sustaining the trial court in his ruling substituting the Federal Agent for the Director General. In Cohen v. Davis (Mass.) 142 N. E. 75, it was said:

"As the cause of action in this case arose during federal control of the railroad, it is now settled that the action should have been brought against the government, and not against the railroad company. Missouri Pacific Railroad v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087; Nominsky v. New York, New Haven & Hartford Railroad, 239 Mass. 254, 132 N. E. 30. The contention of the defendant that the representative of the government cannot be made a party by substitution, in any case where the action originally was wrongly brought against the railroad company, is contrary to recent decisions of this court. Ætna Mills v. Director General of Railroads, 242 Mass. 255, 136 N. E. 380; Genga v. Director General of Railroads, 243 Mass. 101, 110, 111, 137 N. E. 637; Director Gen-

eral of Railroads v. Eastern Steamship Lines, Inc., 245 Mass. 385, 139 N. E. 823.

"The defendant further contends that in no event can substitution be had later than two years after the end of government control. It is true that section 206 (a) of Transportation Act 1920 (41 Stat. at Large, 456 [U. S. Comp. St. Ann. Supp. 1923, § 10071¼cc]), provides that, after the termination of federal control, actions arising out of the operation of the railroad, while under such control, should be brought 'within the periods of limitation now prescribed by state or federal statutes, but not later than two years from the date of the passage of this act.' But that subsection purports to deal only with the time within which actions may be commenced, where the cause thereof arose during federal control, and no action was brought during that period. In the case at bar, the action was begun January 9, 1920, almost two months before the termination of federal control. The subsection of the Transportation Act here applicable is 206 (d), which provides that such actions, 'pending at the termination of federal control, shall not abate by reason of such termination, but may be prosecuted to final judgment, substituting the agent designated by the President, under subdivision (a).' This subsection contains no time limitation. De Witt v. New York Central Railroad, 119 Misc. Rep. 456, 196 N. Y. Supp. 870; Henry v. New York Central Railroad, 204 App. Div. 491, 494, 198 N. Y. Supp. 542; Hanlon v. Davis, 276 Pa. 113, 118, 119 Atl. 822. Even if section 206 (a) were applicable, the Massachusetts law as to amendments does not regard such substitution as the commencement of a new action, and it would have been within the discretion of the trial court to allow the substitution, despite the fact that more than two years had elapsed since the termination of federal control. Ætna Mills v. Director General of Railroads, supra; Genga v. Director General of Railroads, supra; G. L. c. 231, § 138. *In view of the Act of March 3, 1923 (42 Stat. 1443), amending Transportation Act 1920, § 206, we deem it unnecessary to consider the Act of Congress of February 8, 1899 (U. S. Comp. St. § 1594), limiting the time for substitution of a successor in office.* See Sack v. Davis, 245 Mass. 114, 139 N. E. 819; Director General of Railroads v. Eastern Steamship Lines, Inc., supra. We are of opinion that the motion to dismiss was denied rightly." (Italics ours.)

[2] Nor was appellee's cause of action barred by the two years' statute of limitation, because she instituted the suit in her individual capacity, and did not make herself plaintiff, in her representative capacity, until more than two years after the death of her husband. Bird v. Railway, 109 Tex. 323, 207 S. W. 518; Pope v. Railway, 109 Tex. 311, 207 S. W. 514. See, also, Railway Co. v. Kinney, 260 U. S. 340, 43 Sup. Ct. 122, 67 L. Ed. 294.

Appellee sought to establish the cause of her husband's death by circumstantial evidence, and predicated her cause of action upon the negligence of appellant in leaving steel rails on his yard. We take the follow-

ing statement, of the nature and result of this suit, from appellee's brief:

"In the case at bar, the grounds of negligence alleged are: (a) Leaving the loose rails in the switchyard where appellee would trip on them, (b) failure to provide a reasonably safe place in which to work, and (c) failure to warn deceased that the rails were where he would have to alight. The following is a summary of the material facts:

"A switching crew, of which W. P. Preston was longfieldman, on a rainy, stormy night was engaged in moving certain coaches from Union Station, in Houston, to a storage track, the end of which abutted on McKinney avenue. To reach the storage track, the coaches were moved from the station on the 'outbound main line' track which ran in a southerly direction, where it crossed McKinney avenue. There were 5 tracks that cross McKinney avenue, and 4 that abut on the street. The 5 tracks that cross McKinney were on 14-foot centers, looking east from the outbound main. The inbound was next to the outbound main. This would make the inbound main on the left-hand side of the coaches, when crossing McKinney, going south. Looking west at McKinney from the outbound main, there was a rip or storage track at 50 feet, one at 16 feet from that, another at 13 feet from that, and another at 16 feet from that. These abutted on McKinney avenue. The coaches were to be put on one of these rip tracks abutting on McKinney. It was in the line of Preston's duty to get off the moving coaches at McKinney when they crossed that street, to signal the engine crew to stop when the coaches, after being backed onto the rip or storage track, came to the proper distance from McKinney. These rip or storage tracks connected with the outbound main several hundred feet south of McKinney. Preston was last seen alive when he walked out of one of the coaches, just before they reached McKinney. The switch crew rode in one of the coaches from the station out to McKinney. It was usual and customary for the longfieldmen, in performing this duty, to get off at, or just south of, McKinney. Moore says Preston got off on the left-hand side. Beginning a few feet south of McKinney, ordinary steel rails for relaying track were strewn between the outbound and inbound main. A few minutes after Preston had gotten off, his hat, wet and heavy, was picked up, by defendant's witness Quarles, between the tracks of the inbound main, and the lantern between the inbound main and the next track over. These tracks were on 14-foot centers. A newly made heel or foot print was found some 2 to 4 feet from the north end of the first rail, lying between the inbound and outbound main. The hat and lantern were found just about the same distance from McKinney. Defendant's witness Morris, on this, testified:

" 'I judge that heel mark that was talked about there that night was a few feet across and off of the planking that protected the McKinney street crossing; it has been so long, but I judge it was somewheres between 12 and maybe 20 feet, just a short distance off the planking. The place where I saw the hat and lantern was farther over to the left, but just about the same distance from McKinney street. The mark I saw that was talked about

as the heel mark was between the two main line tracks, but that was to the left of the outbound one; then the hat and lantern were farther over to the left still, and about the same distance from McKinney street.'

"Morris saw Quarles picked up the hat and lantern. Other witnesses place the heel track and first rail a little nearer to McKinney. In reference to the heel print, the witness M. A. Moore said: 'I found a heel print there, but I could not swear it was Preston's. From looking at it, it looked like it had just been made.' J. S. McCloud said a foot print or heel print about a step or two from the end of the loose rail was found that night. A. H. Daniels testified: 'We found what looked somewhat like a heel print there in the shell; it seemed to be fresh. I don't know, but it was about 18 or 20 inches I guess—something like that—from the end of those loose rails. This footprint in the shell was in the usual and customary place for longfieldmen to get off the train going down there; it was just about the right place to get off on a paved street there.' The witness T. C. Moore testified: 'I could not tell definitely how long it had been made; I could tell nothing more than you could see a heel mark there, and it looked to be fresh, and we supposed it to be the heel mark where he lit; that was the supposition. * * * The mark I saw that was talked about as the heel mark was between the two main line tracks, but that was to the left of the outbound one; then the hat and lantern were found over to the left still, and about the same distance from McKinney street.'

"The lifeless body, badly mangled, was found a few minutes later just beyond Milby street, some 400 feet from McKinney. Pieces of clothing and other evidence of his having been dragged were found between McKinney and Milby streets. Moore said of this:

" 'I walked all the way up the main line to where we found the body to look for blood or other evidence, to locate where Preston might have first fallen or gotten under the train. Near McKinney, as evidence indicating that he had been caught there at the McKinney street crossing, I saw little pieces of his underclothes and jumper. That was down about —probably a quarter of a block away from McKinney street. There is 300 feet to a block. About 150 feet, I guess, from McKinney street were the first signs I saw that he had been caught.'

"Witness Daniels found one of Preston's shoes 'along the main line about midway between McKinney and Milby.'

"The jury found, on the special issues submitted, that defendant negligently left the loose rails, as alleged, on which Preston stumbled, causing him to fall under the moving coaches, whereby he met his death. They also found that he did not assume the risk and that it was not an inevitable accident. They affirmatively found, on issues requested by defendant, that his death was not caused by the force of the wind; or by the vestibule door falling against him, causing him to loose his balance; or by the fact that the handhold on the car was wet, causing him to slip and fall; or that he did slip on the wet boards of the McKinney street crossing; or that his having on a rain coat, coupled with the fact that a gale was blowing toward the train on the side from which he attempted

to alight; or the fact that he had on gloves, coupled with the further facts that the handhold from which he was alighting was wet, and that a strong gale was blowing toward the train, causing him to slip his hold and lose his balance; or by the fact that the steps from which he alighted were wet on account of the rain, causing him to slip, coupled with the fact that a violent wind, in gusts, was blowing towards the side of the train from which he attempted to alight; or that his rain. coat caught on some part of the vestibule door or other part of the coach from which he was alighting.

"Appellant did not file a motion for new trial. Error is based on the refusal to give a peremptory instruction for defendant. In these circumstances, of course, it will be presumed that the trial court found as true all facts necessary to support the judgment deducible from the evidence, whether submitted to the jury or not."

[3-7] Though there is no material conflict in the evidence in this case, the verdict of the jury should be sustained if it has support in reasonable inferences arising on the admitted facts. The negligence alleged, and its proximate relation to Preston's death, may be established by circumstantial evidence. If appellee has alleged and sustained a negligent act by circumstances, and by circumstances has shown that the alleged negligent act was a contributing cause to the death of her husband, the verdict should be sustained, though other contributing causes may be in the case, not arising on appellant's negligence. Appellee established a prima facie case, if, and when, she produced circumstances by which her alleged negligence and its proximate relation to the death of her husband was shown. Bock v. Felman (Tex. Com. App.) 212 S. W. 635. And she was not under the burden, as claimed by appellant, of excluding all other circumstances that might have caused the death of her husband. While this verdict on circumstantial evidence cannot be sustained, if the evidence shows with equal probability that Preston's death was caused by other facts than those alleged, because in that event appellee has not discharged the burden of proof under which she rested, yet, if it is more reasonably probable that Preston's death was caused in the manner alleged and found by the jury's verdict than by the other means suggested by the evidence, the verdict must be sustained.

[8] Appellant concedes that negligence could be found against his act in leaving the rails on the yard. In our judgment, the evidence is sufficient to sustain a finding that the heel mark in the shell was made by Preston, and that in stumbling he lost his hat and lantern. A reasonable inference from the facts of this case that Preston fell against or under the coach, at or near where his heel mark was found, is a reasonable inference from all the circumstances in this case. If he tripped over the rail, the fact that the rain or wind, or other causes not involving negligence on appellee's part, or not pleaded by appellee, may have contributed to his fall would not defeat appellee's cause of action, provided it can be reasonably inferred that the rail was a proximate cause of his tripping. It is only necessary for the tripping over the rail, if that inference can be drawn, to be an efficient cause, one of the co-operating causes of the death of Preston.

Therefore it may be conceded that all the facts in evidence surrounding the death of Preston were contributing causes to his death, if the evidence raises a reasonable probability that the rail constituted *one* of the contributing causes, the jury's verdict must be sustained. And what is there against that inference? Preston fell under the cars. He alighted from the coach at a place, and under circumstances, to show he might have tripped over a rail. The heel mark shows he was bodily near the rail. In stumbling over an obstacle, it seems to us more reasonable that he would have dropped his lantern than if he had been driven under the coach by the wind. An inference that he stumbled over the rail does violence to no fact in the case, but is in complete harmony with all other facts. In indulging that inference, the jury could have given due weight to the fact that it was raining, that the wind was blowing, that the deceased had on a long rain coat, that the handholds were wet, etc., but to find that one of these causes was the sole and exclusive proximate cause of the death of Preston would require the jury to discard all evidence in regard to the rail, and to minimize the location of the heel track, and the hat and lantern. A verdict in harmony with all the facts seems to us more reasonable than one in harmony with a portion of the facts, and against other facts.

But appellant says, under his proposition, that this conclusion can only be reached by basing one presumption on another. While his proposition is sound as an abstract statement of law, it has no application to the facts of this case, and ignores the further proposition that more than one inference supporting the ultimate fact of liability can be drawn from the same statement of circumstances. In this case, the circumstances are sufficient to sustain a finding of negligence against appellant in leaving the rails on the yard. Appellant concedes that such a finding has support in the inferences arising from the circumstances of this case. On the issue of proximate cause, it was not necessary to invoke the issue of negligence; that is, it was not necessasry first to infer negligence before drawing the inference of proximate cause. Independent of negligence— that is, even if the evidence had failed to show negligence in leaving the rail on the yard—the rail was shown to be a proxi-

mate cause of the death of Preston. Then, from all the circumstances, as one of the ultimate facts of liability, the jury inferred, or found, negligence. Having disposed of that issue, and independent of that finding, the jury again examined the circumstances in evidence, and drew the additional inference of proximate cause. We have, then, two independent conclusions drawn from the ·same statement of circumstances, neither of which rests upon the other. This is not basing one presumption upon another presumption.

The judgment of the trial court is in all things affirmed.