**ATCHISON, T. & S. F. RY. CO. v. SAXON.**
(No. 2358.)

Court of Civil Appeals of Texas. El Paso.
Oct. 24, 1929.

Rehearing Denied Nov. 14, 1929.

Turney, Burges, Culwell & Pollard, of El Paso, for appellant.

Walker Saulsbury and Winbourn Pearce, both of Temple, for appellee.

WALTHALL, J. This suit was brought in the Sixty-Fifth district court of El Paso county, Tex., by Mack Saxon, ancillary administrator in Texas of the estate of J. W. Moore, deceased, against Atchison, Topeka & Santa Fé Railway Company, for damages for personal injuries resulting in the death of J. W. Moore, in the state of New Mexico, on February 15, 1927.

On said date J. W. Moore, deceased, was head brakeman on a freight train of Atchison, Topeka & Santa Fé Railway Company, running west from Clovis, N. M., to Vaughan, N. M. At Tolar, a small station between said places, Moore fell under one of the cars of the freight train of which he was head brakeman, and was instantly killed. Moore's surviving wife, Mrs. Bertha Moore, duly qualified as administratrix of her husband's estate, in New Mexico, and as such administratrix, filed this suit for herself and her two minor children, for damages growing out of the death of J. W. Moore. Appellee, Mack Saxon, duly qualified as the ancillary administrator and personal representative in Texas of the estate of J. W. Moore, deceased, and as such, intervened in this suit, and the trial of this case was prosecuted to final judgment by Mack Saxon in the capacity stated.

Appellee Saxon alleged the death of J. W. Moore, that he was killed at Tolar, N. M., while in the discharge of his duties as head brakeman of appellant railway company,

without fault on the part of J. W. Moore, deceased; that appellant was a common carrier engaged in interstate commerce; that the deceased, Moore, received the injuries resulting in his death while in appellant's service handling interstate commerce, and that the injuries to and the death of J. W. Moore, deceased, were proximately caused by the negligence of appellant railway company, and assigned several acts of negligence, among them the fast running of the freight train, and rough handling; however, the only ones submitted by the trial court to the jury being alleged, substantially, as follows: At said time and at the station Tolar, J. W. Moore, the deceased, had thrown the switch, permitting the entrance of said freight train into said side or passing track, and had, with a flag in his hand, as his duty required, proceeded up the main line track for the purpose of flagging an in-coming passenger train, and that as the freight train entered onto the side or passing track, and proceeded to the other end of the track, J. W. Moore, deceased, as required by his duty, crossed over to the side of said freight train for the purpose of boarding the same, and riding to the further end of the side track, in order to be in better position to discharge the duties required of him with reference to the flagging of said passenger train; that on the side of the passing track or switch track next to the main line, is a well marked and beaten path, wherein brakemen and trainmen, in discharge of like duties, traveled; that the deceased, J. W. Moore, in the discharge of his duties, was walking and running in said pathway, and while so engaged, by reason of a large hole or soft place in said pathway, was caused to be thrown or fall under said train and killed.

The specific negligence assigned is alleged to be in causing or making a hole and depression in the said pathway and in maintaining and keeping said hole and depression and soft place in said pathway; and thereby negligence in failing to furnish deceased a reasonably safe place to work.

In addition to the general denial, appellant pleaded in substance that deceased, Moore, was an experienced brakeman who knew the location of the tracks and the purpose of the train movement at the time of the accident; that he was familiar with the pathway in question, knew the speed of the passing freight train, and that if he undertook to get on the train on the passing track he did so voluntarily, and merely to serve a purpose of his own; that his duties did not require him on the train at that time, and that none of the other employees expected that he would attempt to get on the train; that his only duty was to remain on the ground and close the switch after the passenger train had passed; that if he put himself in a position of danger, he did so voluntarily. Appellant pleaded assumed risk and negligence on

the part of the deceased under and in respect to the circumstances and facts as set up.

The case was submitted to the jury on special issues. After the evidence was heard and before its submission, appellant presented its motion for an instructed verdict, which was refused. Appellant's motion for judgment on the answers returned was likewise refused. Judgment was entered for appellee on the answers of the jury on the issues submitted.

On the issues submitted the jury made the following findings:

1. At the time and place alleged by plaintiff (appellee) there was a soft area or hole between the tracks of the defendant's lines, as alleged by plaintiff.

2. The deceased, J. W. Moore, was running along the track as alleged, and while doing so and attempting to board one of the cars with which he was working he stepped on or upon such soft area or hole and was thereby caused to fall and be injured.

3. The presence of such soft area or hole was due to the negligence of the defendant.

4. Such negligence was a proximate cause of the accident and injury to the deceased, J. W. Moore.

5. Deceased, J. W. Moore, did not know of such soft area or hole and by the use of ordinary care incident to his employment would not have known of it.

6. The accident or injury to the deceased complained of was not due to some other risks of the employment assumed by the deceased.

7. States the reasonable compensation appellee is entitled to recover as the damages sustained.

On the verdict of the jury the court entered judgment for appellee and against appellant for the amount of damages found.

Appellant railroad company filed a motion for new trial, which the court overruled, to which appellant excepted and gave notice of, and has perfected, this appeal.

## Opinion.

■ It is admitted that the cause arises under the Federal Employers' Liability Act (45 USCA §§ 51–59). Under that act negligence as the proximate cause of the death of J. W. Moore, on the part of the appellant railway company must be established.

Appellant submits that appellee has not met that burden. Judgment was entered against appellant based upon the affirmative finding of the jury to the effect that there was a soft area or hole between the tracks of the appellant's lines, and that deceased, while running along the tracks in an attempt to board one of the cars in the moving train, stepped upon such soft area or hole, which caused him to fall. In discussing the question presented we will omit a statement of the evidence offered to show that at the time deceased was killed he was in the discharge of his duty as head brakeman on the train,

and assume that he was in discharge of his duty as such. The freight train on which deceased was brakeman consisted of 110 cars, was headed west, and had been run in on the siding at the station Tolar, to let pass an east-bound passenger train, then about due. The deceased had thrown the switch between the siding and the main line. He would then have to get back on the train and go toward the front and be there ready to let the train out on the main line, and to flag the in-coming passenger train in the event it was necessary to do so.

█ Witness C. E. Mahon testified that he saw the freight train as it was pulling into the siding and saw the deceased; said: "When I saw Mr. Moore he was running along by the side of the train and he just reached up like he was going to catch on, but he didn't raise himself off the ground, the best I could see he didn't catch it. He caught at it but didn't catch it. When I saw him first make the motion as though he was getting on the train, it looked like it was something like about three car lengths behind the engine. After that he ran on west, the same way the train was going. * * * After making this first motion while he was running along by the side of the train about the third car, he continued to run along with the train. The train was outrunning him. Then I saw him make another attempt; that is, reach like he was going to catch again. That was the same kind of reaching as before, but I never did see him raise himself off the ground. He made the same kind of motion toward the car as before. Then he was out of my sight. He was running the last time I saw him and went out of my sight. I never saw him any more after he went out of my sight until he was killed. I know approximately where the place is, my son (Leonard Mahon) pointed out to me where he saw a footprint in a soft place, I know about where it is. I know where Mr. Moore was killed. I went there after he was killed. I saw the place where he was killed under the train and know where that place is. Where my son said this hole was, the last time I saw Mr. Moore, he was east of this hole, but he was killed west of where this hole was. I suppose he passed over that place after he went out of my sight and before he was killed; he was west of this hole when he was killed and he was east of it when I saw him go out of my sight. Oh, it must have been something like maybe fifty or sixty feet, in my best judgment, from the place he went out of my sight to the place he was killed. It must have been something like eight or ten feet, possibly twelve, not so very far, from the place he was killed back to the place where this footprint was. * * * I thought this freight train was running just a little bit faster than common in taking that siding. I saw the passenger train west of there, about a mile west, and this freight train was coming in from the east. *. * *

There was nothing unusual about the movement of the train (freight) only it just seemed like it was trying to get in in plenty of time, trying to pick up speed enough to get in and not detain this passenger. What indicated that to me was that it was kind of jerking occasionally."

On cross-examination witness, after stating where he was, the location of buildings, distances, etc., said: "There was nothing particularly unusual to see a brakeman run alongside of a moving freight train at that station. Some catches on at the front and goes down, and sometimes they wait and catch on further back, you see. * * * I went out to the place where this brakeman was found on the ground after his body had been moved. I didn't see him on the ground at all. I don't know just exactly where on the ground his remains were picked up. I went out there and helped pick up some of the bones left. * * * I arrived at my opinion as to the place he was killed by the blood I saw on the rail."

Leonard Mahon testified: "Am fourteen years old." Did not see the accident. Saw the blood on the track. Said: "I saw a soft place in the pathway over which the brakemen run, it was three feet wide, probably, and four or five feet long and it was along the siding track; it was just east of the house track switch. It was a hole filled with cinders or soft substance, and hadn't been packed down. I saw a footprint in that hole, it was pointed west, it was the left foot. I saw a footprint of the left foot, going west. * * * I stepped in it myself. * * * There was just one footprint. The footprint that I saw in there was deeper than the footprint that I made, it looked as though somebody that was heavy or running had stepped in it. The front part of the foot was deepest. That hole or soft place was six or eight feet, maybe ten feet, east of the place where Mr. Moore was killed. * * * (Pointing out location of the soft place in picture). It extended out about three feet from the track, the passing track, and was four or five feet long. * * * I saw a footprint but I don't know who it was that had stepped in there. I was down there about two hours after the accident. * * * I don't know that there were other people walking up and down there between the time of the accident and the time I got down, they said there were. Mr. Traylor and my father were, but I don't know, I wasn't there. I don't know how many people walked up and down between the time of the accident and the time I got down there."

Irvin Smith testified: Is a schoolboy. Went to place of accident with Leonard Mahon, saw the blood signs where Moore was killed. Said: "There was a soft place probably eight or ten feet before where he was killed, eight or ten feet of where he was killed. * * * Leonard stepped one foot in it, and called my attention to it. * * * I

saw one noticeable footprint in the hole. The footprint was going west. I stepped in the soft place myself; compared to the footprint that I made and the one Leonard made, the footprint in there was a heavier one. It was a man's footprint. The front part was the deepest. It was the left foot. That soft spot was about three feet wide and four feet long, four or five."

R. O. Robinson testified for appellee: Took some photographs at Tolar for the appellant. After stating that he saw the place of the accident, said: "I also saw a hole or depression in the pathway there, used by brakemen, close to that place. * * * It wasn't exactly a hole, it was just a little bit lower place than the surrounding ground, not very much lower, but a little lower. It was possibly some six or eight feet long, I judge. * * * but something near that, and possibly three feet wide. It was just a little bit lower than the other ground surrounding it, the same color ground and everything, but just a little bit lower and softer than the surrounding ground. I stepped in it to see how much it would give. As to whether or not it did give sufficiently to cause a man to lose his balance who was running, I will say that, in my opinion, it might cause a man to stumble who was running and it might not. If a man was not looking and didn't know it was there and stepped in it, it could easily cause him to stumble, in my judgment. That hole was right in the pathway. There was a pathway there, it was well beaten. It was the same color, but you could tell it was worn out. That pathway was close to the track. * * * At this particular point the ground was just a little lower and the path was across it. * * * This path wasn't as plain along this place, particularly as on each side. * * * There was nothing rough about it. I judge the passageway along there was about as smooth as they usually are between railroad tracks."

The above is all the evidence in the record offered by appellee as to the hole, soft place, or depression in the pathway, tending to show any possible connection between the deceased and the accident causing his death.

The theory of the appellee, as alleged, and that upon which the case was submitted to the jury, undoubtedly is that the deceased was attempting to get on one of the freight cars, and stepped in the hole, soft place, or depression and was thereby caused to fall under the moving train and was killed. Appellee alleged that the deceased, "in the discharge of his duty and in order that he might flag said passenger train as far up the track as possible, it then and there became the duty of the deceased to board the said freight train and ride the same as it proceeded on toward the end of the said side or passing track." And again, it is alleged: "As his duty required, (deceased) proceeded up the main line track for the purpose of flagging the said oncoming passenger train, and that as the said freight train entered onto the said side or passing track, and proceeded to the other end of said track, the deceased as required by his duty, crossed over to the side of said freight train for the purpose of boarding the same, and riding to the further end of the side track." The evidence of the witness Mahon, the only witness who saw the deceased running along by the side of the train, clearly indicates that deceased was attempting to get on the moving train, more than once the witness saw him "catch at it but didn't catch it," "reach like he was going to catch again," "but did not see him raise himself off of the ground."

The court submitted the case to the jury in the second issue on the theory that the deceased, "while running along the track" and "while attempting to board one of the cars," stepped upon such soft area or hole and was thereby caused to fall and be injured.

We have referred to the pleading and to Mahon's evidence in view of appellee's suggestion that the facts show deceased only "wanted to board one of the cars." It shows, we think, a continued effort to board the cars.

On the theory upon which the case was submitted the burden was upon appellee to establish the fact that the deceased stepped upon the soft area, depression, or hole, testified about, and that in doing so he was thereby caused to fall and be injured.

It is only a surmise that the deceased stepped on the soft place. Somebody did, but who or when is not made to appear. Even if it be conceded that the deceased stepped on the soft area, there is nothing to indicate that it caused him to fall. The evidence shows one clean impression of one foot, as one running would make, but no indication at or beyond the footprint by any impression on the ground that the soft ground caused the one running to fall. The nearest to it was by the witness Robinson, who said that in his opinion "it might cause a man to stumble who was running and it might not," depending on the circumstances stated. There is no evidence on the ground of a stumble.

It is not made to appear that had the deceased, while running where the footprint was seen, fallen by stepping in the soft ground, he would necessarily or even probably have fallen under the train.

■ We have concluded that there is not sufficient causal connection shown between the soft area, hole, or depression and the accident causing the death of the deceased upon which to base a finding that the soft area proximately caused the deceased to fall and be injured. The evidence must present something more than a mere conjecture. Bock v. Fellman Dry Goods Company (Tex. Com. App.) 212 S. W. 635. In that case the employee fell into an elevator shaft and was killed. There the evidence showed a poorly lighted room with a greasy floor, bearing marks indicating that he slipped and fell

through an opening under the bottom of the gate. Here, as said, the evidence shows no marks of any stumbling, slipping, or falling by reason of the soft place on the footpath.

, Davis v. Preston (Tex. Civ. App.) 264 S. W. 331, referred to by appellee, a writ of error granted and case affirmed 16 S.W.(2d) 117, 118, was a case in which Preston, a longfield-man, on a rainy, stormy night was engaged in moving certain coaches from Union Station in Houston to a storage tank, the end of which abutted on McKinney avenue. It was Preston's duty to get off the moving coaches, in which he was riding, at McKinney avenue, and at that point to signal the engine crew. Preston was last seen alive when he walked out of one of the coaches just before reaching McKinney avenue. Beginning a few feet south of McKinney avenue, steel rails for re-laying the track were strewn between the out-bound and in-bound mains. A few min-utes after Preston got off, his hat, wet and heavy, was picked up between the tracks of the in-bound main and the next track over. A newly made heel or footprint was found some two or four feet from the north end of the first rail, lying between the in-bound, and out-bound main. The negligent act charged was in leaving the steel rails in the switch yards. The jury found negligence in leaving the loose rails on which Preston stumbled, causing him to fall under the mov-ing coaches, and that his death was not caused by other causes mentioned. In that case the witnesses testified that the heel mark "looked like it had just been made." "It seemed to be fresh" and "it seemed to be the heel mark where he (Preston) lit" (in getting off the coach). It seems to us that the identity of the heel mark, from its loca-tion on the ground, its freshness, as testified to by several witnesses, its situation with reference to the loose rails, the uncontrovert-ed evidence that it was in Preston's line of duty to get off the moving coaches at McKin-ney avenue, and that he did get off at that point, and had no duty to perform that could, by any reasonable construction, have caused the accident, other than coming in contact with the steel rails about two and a half feet from the coach steps, from which Preston alighted, much more clearly identify the heel mark as that of Preston's and the steel rails as causing his fall.and injury, than the foot-print in this case, and the soft ground as causing Moore's fall.

As said by the Supreme Court in reviewing the Preston Case: "With evidence disclosing the point at which Preston stepped from the coach by the imprint of his heel on the ground about 2½ feet from the end of the rail, with his duties requiring his next step to be made about where he would be tripped by the end of the rail, especially while combating a 35 miles an hour wind, and with his cap and lantern found about where they would have fallen upon his being tripped by the rail, and with his body actually caught and mangled beneath the cars as they proceeded a short distance farther, *there being no evidence of anything save the rail to reasonably account for Preston's fall beneath the train*, we would not be justified in holding as a matter of law that a recovery should be denied his admin-istratrix on the issue of proximate cause."

A glance at the facts stated, as established, in the above case, will at once show the dif-ference on the issue of proximate cause be-tween the Preston Case and the case at bar.

The case on the facts seems to be fully de-veloped.

For reasons stated the case is reversed and here rendered for appellant.

### On Motion for Rehearing.

Appellee "objects and excepts to the failure of the court to include in the finding of facts a finding that the appellant's agent, E. L. Traylor, was an eye witness to the accident, and respectfully asks that such finding be made."

We add to the findings the uncontradicted statement of the witness Max B. Miller, as requested in the motion, found in the record, as follows: "The agent down there at that' time was Mr. Traylor. I met him when I was down there. He told me he saw the accident. He is here."

We also add to the statement of the witness Robinson, at the request of appellee, the fol-lowing: "I had that (the hole or depression in the pathway there) pointed out to me by the agent, Mr. Traylor."

■ In requesting the additional statement of the fact that appellant's agent, E. L. Tray-lor, had said to the witness Miller that he (Traylor) told the witness that he saw the accident, and that Traylor "is here," that is, was present at the trial, we assume that ap-pellee attaches some probative effect to the fact stated, as a presumption or inference, adverse to appellant, to be drawn from the fact that appellant's agent saw the accident, was present, and was not called to testify by appellant. But, as we view it, the rule that when one party to a suit is in possession of facts, and it is his duty to disclose them, if he fails or refuses to do so, it will be pre-sumed that they are unfavorable to him, has no application here. The rule is well settled that where the doctrine of res ipsa loquitur has no application, there was no duty rest-ing upon appellant to explain anything con-nected with the accident. Here, the witness, being present, was as available to appellee as to appellant. Judge German of the Commis-sion of Appeals, Section A, in Davis v. Cas-tile, 257 S. W. 870, fully discusses the ques-tion presented, and we need only refer to that case and the cases there referred to, and especially the rule of res ipsa loquitur in L. R. A. 1917E, pages 1 to 249, and the cases there referred to.

In considering the case by reason of the

rules as above, we attached no importance to the fact that Traylor saw the accident, and was present at the trial.

The motion is granted to the extent only of adding the testimony as requested, but otherwise is overruled.