THOMAS WHITE *vs.* APSLEY RUBBER COMPANY.

Middlesex.    November 14, 1906. — February 26, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Abuse of Legal Process.    Landlord and Tenant.    Agency.    Corporation.*

One who is arrested and is detained in custody for an appreciable time upon crim-
inal proceedings, which were instituted by the agent of his landlord solely for
the purpose of compelling him to surrender possession of the house occupied by
him as a tenant, can maintain an action of tort against his landlord for abuse of
legal process.

In an action against a corporation for abuse of legal process in instituting crim-
inal proceedings against the plaintiff solely for the purpose of compelling him
to surrender possession of a house occupied by him as a tenant, where the de-
fendant contends that the person who instituted the proceedings acted without
its authority, if it appears that the house occupied by the plaintiff was leased to
the defendant and was placed in charge of the defendant's bookkeeper who let
it to the plaintiff for the purpose of keeping a boarding house for the defend-
ant's employees, that the bookkeeper instituted criminal proceedings against the
plaintiff and caused him to be arrested for the purpose of getting rid of him as a
tenant by forcing him to give up the house, and that a director of the defendant
empowered to act as general manager of its business and the defendant's presi-
dent both had knowledge of the measures taken and either assented to them or
declined to interfere, there is evidence to justify a finding that the defendant
ratified the acts of its bookkeeper, even if original authority had been wanting,
and to warrant a verdict for the plaintiff.

TORT, with two counts for malicious prosecution and two for
abuse of criminal process.    Writ dated April 4, 1898.

In the Superior Court the case first was tried before *Blodgett,*
J., who ordered a verdict for the defendant, and exceptions al-

leged by the plaintiff were sustained by this court in a decision reported in 181 Mass. 339. There was a new trial before *Bell*, J., at which the plaintiff, before the introduction of evidence, elected to rely upon his fourth count and went to trial upon that count. The fourth count was as follows:

"Fourth Count: The plaintiff says that he was at the time of the occurrence of the events hereinafter stated, and always has been, a man of good repute in the community, and free from crime or the suspicion thereof; that on the second day of March, 1898, he was in the occupation of a certain dwelling house in Hudson, Mass., belonging to one L. D. Apsley, president of the defendant, and in possession of the furniture of the said house, including a certain stove the property of the defendant; and on that day the defendant made a complaint under oath to one Ralph E. Joslin, trial justice in and for said Commonwealth in said Hudson, charging the plaintiff with maliciously and wilfully injuring certain property of the defendant, to wit, by concealing the covers of said stove, to the value of two dollars, and upon such complaint obtained a warrant, and thereupon caused the plaintiff to be arrested on said warrant by a police officer of said Hudson, and while the plaintiff was in the custody of said police officer, the defendant taking advantage of the situation in which the plaintiff was then placed by reason of said arrest, by the abuse of said process, compelled the plaintiff to deliver up to it the possession of the said house and the furniture therein, including the said stove and said stove covers; and to this end, instead of permitting the plaintiff to be taken before a court where he might be heard upon said complaint, caused said police officer to falsely imprison the plaintiff, take him to said dwelling house, and there by the abuse of said process to compel him to deliver up said premises and said furniture, including said stove and said covers, and then to conduct the plaintiff with his family away from said dwelling house and through the streets of said Hudson for a distance of half a mile or more in the middle of the day, and exposed to the observation of all persons who were there, and then to be released by the said police officer, and said warrant to be retained by him and never returned into court; all to the great damage of the plaintiff."

The substance of the evidence is described in the opinion. At

the close of the evidence the defendant asked the judge to make certain rulings, concluding with a request for a ruling that upon all the evidence the plaintiff was not entitled to recover.    The judge refused to make the rulings requested, and submitted the case to the jury with other instructions.    The jury returned a verdict for the plaintiff in the sum of $1,058.57; and the defendant alleged exceptions, raising the questions which are considered in the opinion.

*J. T. Joslin & G. A. A. Pevey,* for the defendant.

*F. W. Knowlton,* for the plaintiff.

BRALEY, J.    While not expressly conceded, yet upon uncontroverted evidence it is manifest that a complaint had been made under R. L. c. 208, § 116, charging the plaintiff with the crime of wilfully and maliciously injuring the personal property of the defendant.    A warrant having been issued he was arrested at his home, and after being detained in custody for an appreciable time by the officer serving the process, he was released, while no further steps ever were taken in the prosecution of the case. Upon conflicting evidence, the weight of which was wholly for the jury, they further could find that the criminal proceedings were instituted solely for the purpose of coercing the plaintiff to abandon any claim or right he might have to occupy the house as a tenant, and that when this object had been accomplished by a surrender of his tenancy, and the removal of his family and household goods, he was released from arrest.    Indeed, it must have been perfectly plain, if either his evidence or that of his wife was accepted as substantially stating what occurred, that the criminal law was invoked, not for the purpose of vindicating justice, but to get rid of a troublesome tenant.    If so found, there was an abuse of criminal process, and this is sufficient to support an action against the instigator and promoter of the wrong.    *Wood* v. *Graves,* 144 Mass. 365, 366.    *White* v. *Apsley Rubber Co.* 181 Mass. 339.

It is strongly urged that the defendant cannot be held liable, as the wrong was perpetrated without its authority, or subsequent assent.    But it is responsible for torts committed by its servants when acting within the scope of their employment, or by ratification may become responsible for such acts when committed in excess of their authority.    *Reed* v. *Home Savings*

*Bank,* 130 Mass. 443. *Krulevitz* v. *Eastern Railroad,* 140 Mass. 573; *S. C.* 143 Mass. 228. *Fogg* v. *Boston & Lowell Railroad,* 148 Mass. 513. *Nims* v. *Mount Hermon Boys' School,* 160 Mass. 177, 178. *Comerford* v. *West End Street Railway,* 164 Mass. 13, 14. *Telegram Newspaper Co.* v. *Commonwealth,* 172 Mass. 294. *Dempsey* v. *Chambers,* 154 Mass. 330. If, therefore, there was evidence that the prosecution was set on foot by the defendant's bookkeeper while acting as its servant in the discharge of his duties, or that his acts were subsequently ratified, the defendant must respond for the damages suffered. While the title to the premises was in a stranger, yet the defendant, as lessee, was in possession, and rented the property to the plaintiff together with the furniture which it owned, for the purpose of his keeping a boarding house for the accommodation of its employees, and there was evidence from which it could have been found that the general supervision of the rental and management of the house while thus occupied had been entrusted to the defendant's bookkeeper, whose declarations and conduct, consequently, were admissible in evidence. The plaintiff's tenancy was about to be terminated, and apparently he was only waiting for the notice provided by R. L. c. 129, § 12, to vacate the premises, when the bookkeeper made the complaint, gave it to the officer for service, and caused the arrest to be made. If the plaintiff's retention of the stove covers was mistakenly treated as a malicious injury to the personal property belonging to the defendant, yet by his general employment the bookkeeper was authorized to take appropriate action to prevent their wrongful removal, although it now is urged that they were a part of the realty. In the performance of this duty if he acted recklessly, being intent on ejecting the plaintiff, by using the criminal process as a means of compelling him to vacate, the defendant is liable for his tortious act. *Aiken* v. *Holyoke Street Railway,* 184 Mass. 269, 274. Besides, if original authority were wanting, there was evidence from which ratification could be found, for a director of the defendant empowered to act as a general manager of its business, and the president of the company, each had knowledge of the measures taken, and either assented, or declined to interfere. *Beacon Trust Co.* v. *Souther,* 183 Mass. 413, 416, 417.

What already has been said concerning the issues at the trial, and the supporting evidence, disposes of the exceptions to the refusals to rule as requested, for these requests so far as applicable were embodied in other language in instructions which fully and accurately stated the law.     *Graham* v. *Middleby,* 185 Mass. 349, 354.     *White* v. *Apsley Rubber Co., ubi supra.*

*Exceptions overruled.*