WALTER E. SMITH *vs.* ELIOT SAVINGS BANK
(and a companion case between the same parties).

Norfolk. Suffolk. January 8, 1969. — April 4, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Agency,* Scope of authority or employment. *Bank and Banking. Malicious Prosecution. Probable Cause. Trespass. Evidence,* Public record.

At the trial of an action against a savings bank for malicious prosecution of forgery and larceny charges against the plaintiff arising out of an allegedly unauthorized withdrawal from an account of a depositor with the defendant, evidence that the defendant's treasurer was aware of

such withdrawal and talked with a teller who had handled it and a detective "about the account," discussing "forgeries and larceny," and gave the teller permission to go with the detective "on business which concerned" the defendant, knowing that "there was talk about a prosecution to be initiated" and that they "were going" to a court which issued complaints, warranted findings that the defendant authorized the teller to identify the withdrawer and to sign the complaints on its behalf. [547]

At the trial of an action against a savings bank for malicious prosecution of forgery and larceny charges against the plaintiff arising out of a withdrawal from an account of a depositor with the defendant which the depositor's conservator stated was "unauthorized," where it appeared that a man who represented that he bore a certain name presented to the defendant the depositor's passbook and a withdrawal order giving such name as payee and purportedly signed by the depositor and that the amount of the withdrawal was then paid over, a finding of absence of probable cause for bringing complaints and a finding of malice were warranted by evidence that the teller who signed the complaints had handled the withdrawal in a matter of minutes and did not "confront" the withdrawer thereafter prior to signing the complaints seven months later, and that the defendant "at no time admitted" that the withdrawal was based on a forged signature and "made no claim that any criminal act was involved." [547–548]

One who enters a house by invitation of its owner and not under any authority or license given by law does not become a trespasser ab initio by his conduct thereafter. [548–549]

At the trial of an action against a savings bank for malicious prosecution of forgery and larceny charges against the plaintiff arising out of an allegedly unauthorized withdrawal from an account of a depositor with the defendant, where it appeared that one effecting the withdrawal presented to a teller of the defendant a withdrawal order purportedly signed by the depositor and stating a certain name as payee and the withdrawer identified himself as the payee by means of a motor vehicle operator's license issued in that name, it was held that a certified copy of the payee's application for the license, containing a brief description of his physical characteristics, was admissible under G. L. c. 90, § 30, when offered by the plaintiff to show such physical characteristics. [549]

TWO ACTIONS OF TORT. Writs in the Superior Court dated October 5, 1965, and November 1, 1965.

The actions were tried together before *Spring*, J.

*Brian J. Moran* for the defendant.

*Maurice H. Kramer* for the plaintiff.

SPIEGEL, J. These are actions of tort for malicious prosecution and trespass which were consolidated for trial to a jury in the Superior Court. At the conclusion of the evi-

dence the judge allowed motions for directed verdicts for the defendant. The cases are here on the plaintiff's exceptions to the allowance of those motions and also to the exclusion from evidence of a certain document.

We state the evidence most favorable to the plaintiff. Miss Margaret V. Burns had a savings account with the defendant bank. On April 2, 7, 13, 17 and 24, 1964, withdrawals totaling $4,100 were made from her account. On none of these occasions did Miss Burns appear at the bank. Instead, on each occasion a man who represented himself to be one William E. Shanahan, Jr. presented to a teller at the bank Miss Burns's passbook and a "withdrawal order" naming William E. Shanahan, Jr. as payee and "signed" by Margaret V. Burns. A teller named Ferguson handled the withdrawals on April 2, 7, 13 and 17. On April 24 another teller, William Ley, handled the withdrawal. On that occasion the payee identified himself as William E. Shanahan, Jr. by means of a Massachusetts operator's license issued in that name.

On July 21, 1964, the bank was notified by Miss Burns's conservator that the withdrawals made during April were "unauthorized." The same day a detective from the Boston police department appeared at the bank and talked with the bank's treasurer and Ley. Ley gave the detective a description of the man who presented the withdrawal order on April 24. Sometime between July 21, 1964, and October, 1964, the bank's treasurer found the check that had been given to the person making the April 2, 1964, withdrawal. It had been drawn on The First National Bank of Boston and had been "endorsed" by William E. Shanahan, Jr. On the back of the cancelled check was the number of a Massachusetts operator's license. It was the same as the number Ley had recorded at the time of the April 24 withdrawal.

In October, 1964, Ley learned that the detective had discussed the withdrawals with Miss Burns's conservator and that the conservator had said that the description Ley had given "either fitted a grandson, godson, or nephew of

Miss Burns." On December 2, 1964, the detective returned to the bank, and the bank's treasurer, after discussing the withdrawals with the detective, gave Ley permission to accompany the detective "on business which concerned" the bank. The detective and Ley went to the plaintiff's home in Weymouth. When they found no one there, they went to the home of William E. Shanahan, Jr., also in Weymouth. There they were given "information as to Mr. Shanahan's whereabouts." They then returned to the plaintiff's home, but were refused admission unless a member of the Weymouth police department was present. When they returned with a member of the Weymouth police department, they were admitted by the plaintiff. The detective informed the plaintiff of the general purpose of the visit, but Ley was not identified as a teller at the bank. During the thirty to forty-five minutes the detective and Ley were in the plaintiff's home, Ley "sat there and did nothing." He "took no part in the conversation." Upon leaving the plaintiff's home, Ley informed the detective that the plaintiff was the man who had represented himself to be William E. Shanahan, Jr. on April 24, 1964.

No further attempt was made to locate William E. Shanahan, Jr. The detective and Ley went directly to the Municipal Court of the Roxbury District and obtained complaints charging the plaintiff with forgery, uttering and larceny on April 2, 1964, and with forgery and larceny on April 24, 1964. Ley signed both complaints as the complainant. The grand jury returned a "no bill" on the counts arising from the April 2 withdrawal and indicted the plaintiff on the counts arising from the April 24 withdrawal. The plaintiff was tried in a jury waived session of the Superior Court and was found "not guilty."

Neither the bank's treasurer nor Ley had any doubts concerning the signatures on the withdrawal orders or the cancelled check. The treasurer's belief concerning the validity of Miss Burns's signatures was based entirely on what he had been told by her conservator. The plaintiff is the godson of Miss Burns.

1. The defendant contends that the plaintiff "has totally failed to sustain the burden of proving" that it instituted the criminal proceedings against him. It asserts that there is no evidence that Ley was authorized to identify the plaintiff or to sign the complaints. It argues that under *White* v. *Apsley Rubber Co.* 194 Mass. 97, authority "cannot even be inferred" because it had "no knowledge of Ley's going to Weymouth to identify the plaintiff and later of signing the criminal complaints."

We think that there was sufficient evidence from which the jury could find that Ley had authority to act on behalf of the defendant. The bank's treasurer was aware of the unauthorized withdrawals. On at least three occasions he talked with Ley and the detective "about the account of Margaret V. Burns." During these conversations they "discussed forgeries and larceny." He gave Ley permission to accompany the detective knowing that they "were going on business which concerned the . . . [bank and] that there was talk about a prosecution to be initiated." He knew that Ley and the detective "were going to the Roxbury Court." This is not a case where the plaintiff introduced evidence only of an employer-employee relationship and relied entirely upon the "ostensible scope" of the employee's authority. See *Henriques* v. *Franklin Motor Car Co.* 260 Mass. 518. We are of opinion that the jury could have found that the defendant had given Ley authority to sign the complaints on its behalf. *White* v. *Apsley Rubber Co.* 194 Mass. 97, 99–100.

2. The defendant also contends that "the plaintiff has failed to show that the original prosecution was instituted without probable cause and that it was done maliciously." It asserts that "[t]he basis of the prosecution of the plaintiff . . . is the memory of . . . Ley . . . as [to] the man who presented himself . . . to make [the] unauthorized withdrawals" and that "there is no evidence that casts doubt on Ley's power of observation or evidence that would indicate his motives to be other than honest." It argues that Ley did not "rashly" accuse the plaintiff, having con-

fronted both the plaintiff and the real William E. Shanahan, Jr. "before any criminal prosecution."

However, these contentions ignore evidence to the contrary. The jury could find that, although Ley may have seen Shanahan in court prior to the trial, he did not "confront" him prior to signing the criminal complaints. In an action for malicious prosecution, criminal proceedings are considered to have been commenced when the complaints are signed. It is then that the defendant in the action must have "a state of facts in . . . [his] mind . . . as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested is guilty." *Bacon* v. *Towne,* 4 Cush. 217, 238–239. *Higgins* v. *Pratt,* 316 Mass. 700, 709. In response to written interrogatories the bank's treasurer stated that the bank "at no time admitted that the withdrawals were based on forged signatures and made no claim that any criminal act was involved." He testified that he "wasn't interested in finding out who had perpetrated these misdoings because the First National Bank guaranteed the signature of William E. Shanahan, Jr." The conservator's report that the withdrawals were "unauthorized" was ambiguous. Ley's identification was made seven months after he had handled a single bank transaction that lasted only a matter of minutes. It was made under circumstances which were less than ideal. We think that the jury could have found that the identification was so suspect that "a man of ordinary caution and prudence" would not have relied upon it. The plaintiff was entitled to have the case submitted to the jury in the action for malicious prosecution.

3. The plaintiff contends that Ley's visit to his residence to make the identification constituted a trespass. He argues that Ley entered for an "unlawful purpose" and that when he stayed for "as long as forty-five minutes he became a trespasser, even if his entry in the first instant might have been lawful."

The plaintiff apparently contends that Ley was a trespasser ab initio. Ley was invited into the house. He did

not enter under an authority or license given to him by law. See *Malcom* v. *Spoor*, 12 Met. 279. The rule of the *Six Carpenters' Case*, 8 Coke 146, is not applicable. *Smith* v. *Pierce*, 110 Mass. 35, 38. The motion for a directed verdict was properly granted in the action for trespass.

4. The plaintiff also contends that the judge erred in excluding from evidence a certified copy of William E. Shanahan, Jr.'s application for a motor vehicle license. He argues that it was admissible under G. L. c. 90, § 30, because it "tended to prove a vital factor in the plaintiff's case by showing the impossibility of the plaintiff being mistaken for William E. Shanahan, Jr."

General Laws c. 90, § 30, as amended through St. 1956, c. 351, provides in pertinent part that "[a] proper record of all applications . . . shall be kept by the registrar . . . [and] [c]ertified copies of such records . . ., attested by the registrar or his authorized agent, shall be admissible as evidence in any court of the commonwealth to prove the facts contained therein." The application in question contained a brief description of the physical characteristics of William E. Shanahan, Jr. It was admissible to prove the "facts contained therein" that Shanahan was five feet, eight inches tall and twenty-seven years of age.

5. In the action for malicious prosecution the exceptions are sustained. In the action for trespass the exceptions are overruled.

*So ordered.*